Motion to reinstate this appeal denied January 16, 1904.

STATE EX REL. MORSE ET AL., RELATORS, *v.* DISTRICT COURT OF THE SEVENTH JUDICIAL DISTRICT ET AL., RESPONDENTS.

(No. 2,005.)

(Submitted November 25, 1903. Decided December 4, 1903.)

*Contempt of Court—Habeas Corpus—Avoidance of Service— Costs—Writ of Supervisory Control.*

1.   A chief of police and his subordinates, who, with actual knowledge that a
     writ of *habeas corpus* had been issued for a certain prisoner under their
     control, endeavored to avoid the service and execution of the writ, and
     aided in delivering the prisoner into the custody of a messenger from the
     governor of another state, under extradition process, were guilty of con-
     tempt of court.

2.   It is not necessary, before a party can be punished for contempt for inter-
     ference with, or disobedience of, a writ of *habeas corpus,* that actual ser-
     vice has been had, if the party actually knows that the writ is in the hands
     of an officer for service.

3.   In a proceeding for contempt of court, the costs cannot be charged to the
     contemners.

4.   The writ of supervisory control should be seldom used, and then only in the
     greatest emergency where palpable injustice has been done and there is no
     other remedy provided by law.

PETITION by the state, on the relation of Sydney F. Morse
and others, for a writ of supervisory control to the district court
of the Seventh judicial district, in and for the county of Yel-
lowstone, and Hon. Charles H. Loud, judge thereof.

*Mr. O. F. Goddard,* for Relators.

*Mr. W. M. Johnston,* and *Mr. Fred. H. Hathhorn,* for Re-
spondents.

MR. JUSTICE MILBURN delivered the opinion of the
court.

The petitioners herein pray for a writ of supervisory control,
to be directed to the district court, commanding it to vacate and
set aside a certain judgment of said court, whereby the peti-
tioners were adjudged guilty of contempt, and ordered to pay
certain fines and costs.

On the 14th day of September, 1903, a writ of *habeas corpus*
was duly issued out of the office of the clerk of the district court,
directed to one Sydney F. Morse, and commanding him to have
the body of one Carey P. Snyder, alleged to be in prison and
unlawfully detained by said Morse, before the Honorable Charles
H. Loud, district judge, at 1:30 p. m. the following day. It
appears that said Morse was then chief of police in the
city of Billings, having under his control a sergeant and other
policemen. Said Morse was then also a constable in and for

the township of Billings. It further appears that said Snyder
was in his custody as constable, being charged with the violation
of one of the criminal laws of the state; that the prisoner was
confined in the city jail, which was under the sole control of
Morse, as chief of police, and of his subordinates; that at the
time the writ was issued a messenger of the governor of Mis-
souri was en route to Billings from Helena, armed with a war-
rant of the governor of Montana authorizing him to take said
Snyder into his custody under the extradition laws for removal
to Missouri; and that the writ of *habeas corpus* was issued on
the evening of the 14th day of September, between 8 and 9
o'clock, two or three hours before the arrival of the train bear-
ing the messenger. · Prior to the issuance of the writ of *habeas
corpus,* and soon afterwards, and long before Snyder was de-
livered to the messenger on the train, the petitioner Harris,
"the right arm of the court," being then and there county attor-
ney of the county of Yellowstone, and at Billings, inquired of
the clerk of the court whether the writ had been issued, and,
receiving information that the same had been issued, informed
himself of the nature and contents thereof.

Although there was no technical, actual, personal service of
the writ upon Morse prior to the removal of the prisoner from
the county, by the messenger to whom he was delivered by the
police, it must have been apparent to the district court, upon
the hearing in contempt, as it is apparent to us, that all of the
relators herein, having knowledge that the writ had been issued,
used their utmost endeavor to avoid it, whether directed to
Morse or the messenger, and to aid the messenger in carrying
away the body of Snyder out of the county in opposition to the
order, for the time being, of the district court.

The privilege of the writ of *habeas corpus* may not be sus-
pended or obstructed by a chief of police or a county attorney.
It is impossible to conceive of a more flagrant act of contempt
of court than the unlawful interference with such a writ. Al-
though one or more of the parties disavowed in their testimony
any knowledge whatever that the district court had caused the
writ to be issued, nevertheless it was for the court to pass upon

the credibility of the witnesses and the weight of the testimony before it. There is sufficient testimony appearing in the record, which, if believed by the court to be true, warranted it in arriving at the conclusion which it did in the contempt proceedings.

The writ applied for, as this court has said before, should be seldom used, and then only in the greatest emergency, where palpable injustice has been done arbitrarily and perhaps maliciously, and where there is no other remedy provided by law. This does not appear to be such a case.

It is not necessary, before a party can be punished for contempt for interference with or disobedience of a writ of a competent court, that actual service has been made, if the parties actually know that the writ is in the hands of an officer for service.

The record shows that the court, when it entered its judgment, was in doubt as to whether the costs should be charged to the parties found guilty of contempt, but resolved the doubt against such persons, and adjudged them to pay the costs in addition to the several fines. In this the court erred. There is no provision of law for charging the costs in contempt proceedings to the contemners. (*State ex rel. Flynn* v. *District Court,* 24 Mont. 33, 60 Pac. 493.) This is not a matter to be remedied in this proceeding. We simply call the attention of the court below to the mistake made as to the charging of costs against the guilty parties.

The writ is denied and the proceedings dismissed.

*Dismissed.*