STATE ex rel. EDWARDS et al., Relators, v. DISTRICT COURT et al., Respondents.

(No. 2,869.)

(Submitted May 21, 1910.   Decided June 7, 1910.)

[109 Pac. 434.]

*Cities and Towns—Police Department—Metropolitan Police Law —Contempt—Costs—Contemnor not Liable.*

Mandamus—Return—Contents.
   1.   The return to a peremptory writ of mandate should contain a certificate of compliance, unless something impossible or unlawful is commanded, or such a change of conditions has taken place as to make compliance improper, in which case the facts should be stated.

Same—Contempt—Violation of Metropolitan Police Law—Evidence—Sufficiency.
   2.   Where, after the mayor of a city had been directed by writ of mandate to reinstate certain policemen in their respective offices from which they had been ousted contrary to the provisions of the Metropolitan Police Law (Revised Codes, secs. 3304–3317), his action in instructing the chief of police to include two special policemen, whose appointment had theretofore been made without warrant of law and whose continued employment would consume the funds available for police purposes, to the exclusion of those whose reinstatement had been ordered, among those who were to be regularly employed, constituted sufficient justification for finding him guilty of contempt of court.

Same—Contempt—Who may be Guilty of.
   3.   It was not necessary that aldermen of a city, who, knowing of the issuance of a writ of mandate to the mayor commanding him to reinstate in office certain policemen, theretofore unlawfully removed, and ordering their salaries to be paid, by their concerted action assisted the latter in defeating the purpose of the order of court, should have been parties to the original *mandamus* proceeding or served with the writ, to make punishment for their contumacious conduct in obstructing the administration of the law proper.

41 Mont.—24

Same—Scope of Order—Law of the Case.
    4. By affirming the judgment of the district court directing, on proceedings in *mandamus*, the reinstatement of policemen to their offices and the emoluments thereof, the supreme court impliedly held that the remedy by writ of mandate was available to secure to a public officer the salary attached to his office; hence argument on the question, on application for a writ of supervisory control to annul a judgment in contempt, was foreclosed.

Same—Contempt—Costs—Contemnor not Liable.
    5. That portion of the judgment of conviction for contempt requiring the contemnors to pay the costs incident to the proceedings, in addition to the fines imposed, was without warrant in law, and therefore unenforceable.

APPLICATION for a writ of supervisory control to annul judgments of conviction for contempt in *mandamus* by the state, on the relation of Frank J. Edwards and others, against the District Court of the First Judicial District and James M. Clements, a judge thereof. Heard upon respondents' motion to dismiss the proceedings. Dismissed.

*Mr. Edward Horsky,* for Relators, submitted a brief and argued the cause orally.

*Mr. William T. Pigott* and *Mr. Massena Bullard* appeared in behalf of Respondents and argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This proceeding grew out of two certain causes heretofore before this court: *State ex rel. Quintin* v. *Edwards,* 40 Mont. 287, 106 Pac. 695; *State ex rel. Bailey* v. *Edwards,* 40 Mont. 313, 106 Pac. 703. On February 9 of this year the *remittitur* in each of the two above causes was filed in the office of the clerk of the district court of Lewis and Clark county; the peremptory writ of mandate in each cause was issued and served; and on February 19 the defendant Edwards made his return thereto. On April 28, 1910, Quintin and Bailey each made an affidavit and filed it with the district court of Lewis and Clark county, charging Edwards with contempt in each instance, in failing to carry out the mandate of the court, and also charging seven members of the city council with willfully obstructing the process

of the court.   The several persons thus charged with contempt appeared, and, after a hearing, the district court adjudged them guilty of contempt in each instance and imposed fines.   Application was thereupon made to this court, by the defendants in the contempt proceedings, for a writ of supervisory control to annul the judgments.   An order to show cause was issued, and upon the return the respondents, court and judge, interposed a motion to quash the order to show cause and to dismiss the proceeding, and upon this motion the cause was argued and submitted.

The judgment of the district court, in the *Quintin Case* above, commanded the defendant in that case, Frank J. Edwards, as mayor of the city of Helena, ''forthwith to reinstate said relator [Quintin] in his position, place and right of policeman or patrolman of the city of Helena, Montana, and in all duties, privileges, and emoluments of said position or place, and to admit him to the use and enjoyment of his said right or office, from which he has been and is now unlawfully precluded by the said defendant.''   The judgment in the *Bailey Case* was of like import, except that it directed the restoration of Bailey to the office of police captain.   Upon appeal, each of these judgments was affirmed by a majority of this court.   (*State ex rel. Quintin* v. *Edwards*, above; *State ex rel. Bailey* v. *Edwards*, above.)

The writ of mandate in the *Quintin Case*, directed to and served upon Edwards, commands: ''That immediately upon service upon you of this writ, you reinstate said Moses Quintin, the plaintiff and relator, in said position, place, and right of policeman or patrolman of said city of Helena, and in all duties, privileges and emoluments of said position or place, and admit relator and plaintiff to the use and enjoyment of the said right or office, from which he has been and is now so unlawfully precluded by you.''   The writ in the *Bailey Case* is to the same effect, except that he is directed to be restored to the office of captain of police.

Section 7216, Revised Codes, contemplates that, after service of a peremptory writ of mandate, a return shall be made by the party upon whom the writ is served; and while the Code does not specify what the return shall contain, the general rule is:

"The return differs from the return to an alternative writ in that it should contain merely a certificate of compliance, unless something impossible or unlawful is commanded, or such a change of conditions has taken place as to make compliance improper, in which case the facts should be stated." (26 Cyc. 493.)

When the language of the peremptory writ of mandate quoted above is recalled to mind, the return of the mayor of itself evidences a failure on his part to comprehend the import of the writ, or a manifest purpose to evade it. The return in the *Quintin* and *Bailey Cases* is the same, and it is anything but a certificate of compliance with the writ. In the first paragraph of the return in the *Bailey Case,* the mayor states that he has directed the chief of police "to take such steps as would be necessary to reinstate said relator to his former position, and to also inform him that no provision was made for the payment of his salary; no appropriation had been made to meet such expenditure and no tax levy had been made to meet any expenditure in excess of that now required for the present number of officers who are serving and who were regularly appointed under the provisions of the metropolitan police bill, and whose warrants are drawn upon the police fund." The return then incorporates in and makes the principal part of it a communication which the mayor addressed to the chief of police, the pertinent portions of which upon this inquiry are: "The amount now in the police fund representing the amount remaining from the previous tax levy is sufficient only to meet the salary, during the present fiscal year, of the chief of police, sergeant of police, six patrolmen, and the two jailers. If this is not fact, please advise me. You are directed, therefore, to employ only such number of men as the funds on hand will compensate, with due regard to the period of time which the tax levies, when made, were intended to cover. * * * You are advised, also, that out of the police fund, salaries may be paid of the following patrolmen: Jos. D. Gossette, Fred W. Gardner, and Fred. Mundt; also, John Fister, serving instead of Samuel Pulliam, who has not resigned, Samuel Wil-

son, serving instead of Edw. Burke, who has been granted a leave of absence, and William Bossler who may serve in the place of Ed Wilson, who is not serving, and who has not resigned. * * * Following the abolition of the office of captain of police, no provision was made for the compensation of such officer. It would appear necessary, therefore, to place such officer on the eligible list until the necessary provision for compensation is made. If it is the desire of the former captain of police to serve either as captain or patrolman without compensation or to look to the city or to a fund of the city other than the police fund for compensation, such will be his privilege and you are directed to so advise him. As to patrolmen, this may also apply to Farnum and Quintin, who may serve under the same conditions if they so desire, or to be placed upon the eligible list.''

Upon the trial of the contempt charges it was made to appear that during February and March, 1910, John Fister and Samuel Wilson were employed as policemen, and they are designated by the mayor as two of those whose names should be placed upon the pay-roll to receive compensation from the police fund. So far as the record before us is concerned, it appears that these two men are what are called special policemen; that they do not serve for any specified term; and that they have not been appointed to their offices under the Metropolitan Police Law. We will not stop to consider whether the mayor may appoint such special policemen in the event that there are not any available men on the eligible list, for Bailey and Quintin were available, but when there are available men on the eligible list, the appointment of such specials is absolutely void and their payment a misapplication of the public funds; and the direction of the mayor to the chief of police to include these so-called special policemen among those who were to be regularly employed and whose employment would consume the funds, to the exclusion of Bailey and Quintin, was of itself sufficient justification for the judgments as to the mayor.

But more than this. The mayor informs the chief of police that the office of captain of police has been abolished. The de-

cision of the majority of this court was to the contrary. Bailey was ordered reinstated in his office as captain of police, with all the privileges, duties and emoluments thereof. But the mayor directs the chief of police to place Bailey on the eligible list or to permit him to serve as captain or patrolman without compensation, or to look to some fund other than the police fund for his compensation, and this last portion of his communication is made applicable to Quintin as well. The evidence discloses that these instructions were followed by the chief of police. The evidence further discloses that after the so-called reinstatement of Bailey and Quintin, they were singled out from the other members of the police force and subjected to petty annoyances and humiliating treatment altogether unworthy of those responsible for it, and altogether inconsistent with the idea that any effort, in good faith, had been made to restore them to their former positions.

But emphasis is laid upon the fact that the members of the city council who were adjudged guilty of contempt were not parties to the Bailey and Quintin proceedings and were not served with the writ of mandate. Of course, if the Bailey and Quintin proceedings sought to compel some affirmative action from these members of the council, then they would be entitled to a day in court in the *mandamus* proceedings, but such was not the fact. Bailey and Quintin sought reinstatement in their respective offices and to the duties, privileges and emoluments thereof to the same full extent as before their ouster, and they succeeded. These aldermen are not punished for their failure to do some affirmative act or acts, but for their willful and contumacious conduct in obstructing the administration of the law. They knew the writ of mandate had been issued in each case, and its purpose and extent, and under such circumstances it is not necessary that they should have been parties to the original proceedings or served with the writ. This record discloses that when the claims of Bailey and Quintin for February salary were presented to the city council, they were referred to a committee consisting of three of these petitioners, *viz.*, Geier, Shelley and

McCormick, who reported as follows: ''As to the parties' claims for services from February 10, 1910, being for eighteen days in February, we find that the said parties were reinstated by the mayor pursuant to the mandate of the court, as more fully described in the return made in response to said mandate. We therefore recommend that the council take action in conformity with the return so made by the mayor, a copy of which is hereto attached.'' Upon motion, that report was adopted, each of these petitioning aldermen voting in the affirmative. And, as if to give added emphasis to their contempt for the decision of this court and the mandate of the district court, the city council on March 21, 1910, passed, and the mayor approved, an ordinance making appropriations for the ensuing fiscal year, in which ordinance there is not any provision made for the compensation of a captain of police. (Upon the passage of this ordinance, petitioners Fisk and McCormick did not vote.) These acts are recalled in this connection, as showing, or tending to show, willful intent and bad motives—not to intimate that by the writ of mandate the district court was attempting to control, or might control, the legislative functions of the city council. To say that these acts do not amount to a demonstration of concerted action upon the part of these aldermen to assist the mayor in preventing Bailey and Quintin from reaping the fruits of their victory—to prevent them from enjoying the emoluments of their respective offices—would be a serious reflection upon human intelligence.

It is urged that the writ of mandate went too far in directing the reinstatement of Bailey and Quintin to the emoluments of their respective offices, and it is said that *mandamus* is not a remedy available to secure to a public officer the salary attached to his office; but, so far as this proceeding is concerned, argument upon that question is foreclosed. By affirming the judgment of the district court, which directed such restoration, the decision of the majority of this court impliedly held that such remedy was available. Upon the issuance of the *remittitur* from this court, the decision of the majority in the *Bailey* and *Quintin Cases* became the law of this state, and, whatever difference of

opinion there may be as to the soundness of those decisions, there cannot be any as to the duty of every good citizen to obey.

The mayor cannot be heard to say that the city's funds are not sufficient to pay these regular policemen, but are sufficient to pay the so-called special policemen. Good faith on his part required the immediate discharge of the so-called special policemen if the funds were not sufficient to pay them, and to pay Bailey and Quintin. And good faith on the part of these aldermen required that they should not interpose by word or act to prevent Bailey and Quintin from getting the salary to which each was entitled under the mandate of the court. That Bailey and Quintin were not restored to their respective offices, with all the duties, privileges and emoluments thereof, to the same extent as before their dismissal, is so perfectly apparent, that further reference to the evidence is not necessary.

But it is said that the judgments in contempt are uncertain. Each recites that all the material averments in the affidavits are found to be true by the district court; and it is now said that it is uncertain what averments were considered material. But this criticism is hypercritical. Had the trial court omitted the word *material*, we would not feel disposed to interfere or criticise the judgments; for it appears to us that the evidence would justify a finding that every averment of disobedience has been proven. It is true that the court stated at the conclusion of the hearing that the evidence failed to show that Bailey had sought to exercise all the duties of police captain and had been refused; but this statement is not necessarily inconsistent with the finding made. In order to prove the charges it was not necessary for Bailey to show that he had sought to exercise all the duties of the office of police captain and had been refused. The evidence in support of the specific acts of contempt set forth is overwhelming. It surpasses the bounds of credulity to say that Bailey was restored to all the rights, privileges and duties of the office of police captain, as defined in section 133 of the ordinances of the city of Helena.

However, the judgment in each case is erroneous in requiring the contemnors to pay the cost in addition to the fines imposed (*State ex rel. Flynn* v. *District Court*, 24 Mont. 33, 60 Pac. 493; *State ex rel. Morse* v. *District Court*, 29 Mont. 230, 74 Pac. 412); but such error does not call for action on our part at this time. That portion of each judgment is not enforceable.

The record before us does not present facts sufficient to warrant us in interfering with the action of the district court. The motion to quash is sustained, and this proceeding is dismissed.

*Dismissed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.