STATE ex rel. KEILEY et al., Relators, *v.* DISTRICT
COURT et al., Respondents.

(No. 4,599.)

(Submitted June 4, 1920. Decided July 6, 1920.)

[191 Pac. 519.]

*Contempt —Water    Rights — Evidence—Sufficiency—Supervisory Control.*

Contempt—Supervisory Control—Extent of Review.
1. On writ of supervisory control to review an order finding relators
guilty of contempt for, violation of a decree adjudicating water
rights, attacked on the ground of the insufficiency of the evidence to
sustain it, the supreme court can only determine whether the district
court, acting within jurisdiction, had before it substantial evidence
to support the order, its weight and the credibility of the witnesses
being matters within the exclusive province of that court.

Same—Evidence—Sufficiency.
2. *Held,* that the district court had before it substantial evidence
warranting it in finding that the claim of relators that they had
developed a new supply of water having no connection with the
stream for interfering with adjudicated rights in the waters of
which they were adjudged guilty of contempt, was without merit.

(Mr. Justice Holloway, dissenting.)

Original application for writ of supervisory control by
the State of Montana, on the relation of Edward B. Keiley
and others, who had been adjudged to be in contempt,
against the District Court of the Third Judicial District for
the County of Powell, and George B. Winston, the Judge
thereof. · Order to show cause quashed, and proceedings dismissed.

*Mr. J. A. Walsh,* for Relators, submitted a brief and argued
the cause orally.

*Mr. S. P. Wilson* and *Mr. E. J. Cummins,* for Respondent,
submitted a brief; *Mr. Wilson* argued the case orally.

MR. JUSTICE COOPER delivered the opinion of the court.

On November 20, 1911, in a case entitled David J. Coughlin
*et al.,* Plaintiffs, vs. Mary V. Hoepfner *et al.,* Defendants,

a judgment was rendered in the district court of the third judicial district in and for Powell county, adjudicating all the rights in the waters of Nevada Creek and its tributaries in that county to the parties therein, and awarding to each the use of a specific number of inches of such waters. To this decree the predecessors in interest of the relators were parties. By affidavit of date September 2, 1919, relators were charged with opening the headgate of their ditch leading out of Nevada Creek, and causing to flow upon their lands, and to irrigate the same, more than fifteen inches of water to which they were not legally entitled, against the order of the court and in violation of the decree rendered and entered therein. Upon their plea of not guilty a hearing was had in open court, a judgment of guilty rendered, and a fine of $50 assessed against them. Upon the assumption that the judgment was without sufficient evidence to sustain it and to have it annulled, this proceeding was instituted.

The evidence on behalf of the prosecution tended to show [1, 2] that on August 29, 1919, fifteen inches of water were flowing through the headgate and ditch of relators and out upon their land; that the water so diverted came out of the natural channel of a slough tributary to, and a part of, the normal flow of the waters of Nevada Creek; that relators knew that prior appropriators were entitled to, and in need of, all the water flowing therein; that the water commissioner, acting under the orders of the court pursuant to the decree in the original case, when the waters of Nevada Creek began to materially diminish in quantity—about the 7th of July—turned all of it out of the ditch mentioned, and into the ditches of persons having rights prior in time and superior to those of relators. Defendants below asserted no right to the waters of Nevada Creek proper prior to that of the parties receiving the water from the water commissioner, but did claim, and by the testimony sought to prove, that, by reason of the development of the fifteen inches mentioned, the natural source of which is a spring or slough having no connection with Nevada

Creek or in any wise dependent thereon, they are legally entitled to it, and therefore not properly chargeable with the offense upon which their conviction stands. To the judgment of the district court was confided determination of this disputed question of fact. That court decided against the contention of relators and adjudged them guilty of contempt as charged.

The evidentiary facts and circumstances were sufficient in weight to convince the trial court of the truth of the charge beyond a reasonable doubt. With that conclusion it is not our privilege to interfere; for every court is the exclusive arbiter of its own contempt, the point of jurisdiction and the legality of its exercise being the only questions subject to review. It was within the province of the trial court to entirely disbelieve the testimony of the defendants to the effect that they did not divert any of the waters as charged. Categorical denials may not destroy a conviction founded upon substantial evidence, nor prevent the deduction of inferences the court can properly draw. In *State ex rel. Zosel* v. *District Court,* 56 Mont. 578, 185 Pac. 1112, too, the defendants claimed a new and different source of supply from that adjudicated in the original case. That contention was there repudiated by the district court, and the proceedings under petition for writ of supervisory control were ordered dismissed by this court. Upon the authority of that case this writ must stand or fall. Further discussion would add nothing to judicial precedent.

The motion to quash the order to show cause issued herein is therefore sustained and the proceedings are dismissed.

*Dismissed.*

Mr. Chief Justice Brantly and Associate Justices Hurly and Matthews concur.

Mr. Justice Holloway: A contempt proceeding is essentially criminal in character, and is subject to the rules of evidence applicable to criminal cases; that is to say, the character and *quantum* of proof are determined by the same

standards in a contempt proceeding as in any criminal case. To justify a judgment imposing punishment for contempt, the evidence must establish the contemnor's guilt beyond a reasonable doubt. (*State ex rel. Boston & Mont. Co.* v. *Judges,* 30 Mont. 193, 76 Pac. 10.) It is true that the evidence which tends to establish guilt need not be direct. It may be circumstantial; but, if circumstantial evidence is relied upon, then the rule by which the sufficiency of the evidence is to be determined is too well settled to admit of controversy. It has been stated by this court repeatedly as follows: "When a conviction is sought upon circumstantial evidence, the circumstances proved must be consistent with each other and with the hypothesis of defendant's guilt, and at the same time inconsistent with any rational hypothesis other than that of his guilt." "Circumstantial evidence, to warrant a conviction of crime, must be of a conclusive nature and tendency, leading, on the whole, to a satisfactory conclusion, and producing a reasonable and moral certainty that the accused, and no one else, committed the crime charged." (*State* v. *Chevigny,* 48 Mont. 382, 138 Pac. 257; *State* v. *Sieff,* 54 Mont. 165, 168 Pac. 524; *State* v. *Riggs,* 56 Mont. 393, 185 Pac. 165.)

The evidence produced against the accused upon the hearing of this proceeding is wholly circumstantial and, in my opinion, falls far short of meeting the requirements of the rule above. At most, it does not do more than create a suspicion that the accused were the persons responsible for the water being used in violation of the decree, and that is not sufficient. This court is committed to the doctrine that "A defendant may not be convicted on conjectures, however shrewd, on suspicions, however justified, on probabilities, however strong, but only upon evidence which establishes guilt beyond a reasonable doubt; that is, upon proof such as to logically compel the conviction that the charge is true." (*State* v. *Mullins,* 55 Mont. 95, 173 Pac. 788.)