STATE EX REL. NETT, RELATRIX, *v.* DISTRICT COURT ET AL., RESPONDENTS.

(No. 5,658.)

(Submitted December 19, 1924. Decided January 5, 1925.)

[232 Pac. 204.]

*Contempt—Nature of Proceedings—Answer—Evidence Admissible Under Plea of not Guilty—Costs.*

Contempt Proceedings—Criminal in Nature.
    1.   Contempt proceedings are criminal in their nature, and the evidence must show that the accused is guilty beyond a reasonable doubt, otherwise he is entitled to his discharge.

Same—Contemnor may Answer, How.
    2.   A person charged with constructive contempt may make answer by affidavit, by a verified answer or by a verbal plea of not guilty; and on the hearing should be permitted to present every defense to show that he is not guilty of the contempt charged.

Same—Evidence Admissible Under Plea of not Guilty.

3. Under her plea of not guilty to the charge of interference with a water right the decree adjudicating which reciprocally had enjoined the parties from interfering one with another, the contemnor was entitled to show that she turned the water out of a ditch running through her land in an endeavor to prevent the land from being flooded and that complainant had abandoned the ditch, and the ruling of the trial court that such evidence was inadmissible in the absence of an affirmative pleading was error.

Same—Costs not Assessable Against Contemnor.

4. Costs in a contempt proceeding may not be assessed against the contemnor but must be paid out of the fine where a fine is proper.

Original application by the State of Montana, on the relation of Anna E. Nett, for a writ of supervisory control directed to the District Court of the Eighth Judicial District in and for the County of Cascade and J. B. Leslie, a judge thereof. Judgment annulled and writ issued.

*Mr. A. H. Angstman,* for Relatrix, submitted a brief and argued the cause orally.

The court erred in denying relatrix an opportunity to show cause why she should not be punished for contempt. (See *Geddes* v. *North Ogden Irr. Co.,* 33 Utah, 456, 94 Pac. 822; *Fuller* v. *Sharp,* 33 Utah, 431, 94 Pac. 813; *Steele* v. *Hohenadel,* 141 Ill. App. 201; *Wheeler & Wilson Mfg. Co.* v. *Boyce,* 36 Kan. 350, 13 Pac. 609; *In re Holt,* 55 N. J. L. 384, 27 Atl. 909; *State* v. *Clancy,* 24 Mont. 359, 61 Pac. 987; *In re Cooke,* 116 La. 733, 41 South. 53; *State* v. *Clancy,* 24 Mont. 359, 61 Pac. 987; *Windsor* v. *McVeigh,* 93 U. S. 274, 23 L. Ed. 914 [see, also, Rose's U. S. Notes].)

Costs may not be recovered in a contempt case. (*State ex rel. Morse* v. *District Court,* 29 Mont. 230, 74 Pac. 412; *State ex rel. Edwards* v. *District Court,* 41 Mont. 369, 109 Pac. 434; *Dunlavey* v. *Doggett,* 38 Mont. 204, 99 Pac. 436.)

*Mr. H. G. McIntire,* for Respondents, argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

In a proceeding charging her with having committed a contempt of court Anna E. Nett was found guilty. The court rendered judgment imposing upon her a fine of $250, and also ordered therein that the complainant recover from her his costs in the proceeding. Thereupon she made application to this court for a writ of supervisory control, upon which an order to show cause was issued.

The proceeding was instituted by affidavits filed by John A. Willard as complainant, which recited, among other things, that in a decree rendered by the district court of Cascade county in 1911, to which both he and Nett were parties, the water rights of the parties thereto were established in Sun River and its tributaries; by the terms of the decree the parties thereto were reciprocally enjoined and restrained from interfering in any manner with one another "in their respective rights to the use of  *  *  *  the said waters of Sun River, or its tributaries, and the said water ditches and water rights of the respective parties." The decree awarded 80 inches of the waters of Willow Creek, a tributary of Sun River, diverted by a certain ditch for irrigating certain lands, to a predecessor of Willard. It is set forth in Willard's affidavit that ever since on or about the twenty-second day of December, 1913, he "has been and now is the owner of the above-described lands and the aforementioned water right;  *  *  *  that said water right has never been abandoned." That on May 31, 1924, at a time when the complainant's lands were in great need of irrigation, he turned the water to which he was entitled into the ditch and Nett, relatrix here, closed down the headgate and thereafter prevented any water from flowing down the ditch. Upon the affidavits an order was issued requiring the relatrix to show cause why she should not be punished as for a contempt of court.

After a number of continuances by consent of counsel the cause came on for hearing October 4, 1924. Relatrix entered

a plea of not guilty. Thereupon evidence in support of the affidavits was given by complainant and his witnesses. Relatrix then took the stand in her own behalf.

It appears that the ditch through which complainant claims the right to conduct the waters of Willow Creek to his land first passes over the lands of relatrix. She has a right to use water through this ditch, a right prior in time to complainant's but this fact is not material to the present controversy for the reason that at the time complainant attempted to run water through the ditch there was ample water in the stream to supply the rights claimed by both parties. The relatrix admitted that she had turned the water out of the ditch and back into the creek, thereby preventing its flow down to the lands of the complainant. In defense of her action in so doing she attempted to show, first, that the reason she turned off the water was to protect her lands, contending that the ditch was not in a condition to convey water, and when complainant turned in the water it overflowed the banks of the ditch and went then upon the farming lands of relatrix, thus preventing her from seeding her lands which she was then attempting to do. The court sustained an objection to proffered testimony along that line, saying: "I don't think you can come in here with that kind of defense. You ought to have set that up affirmatively." As will be seen presently, we think the court was wrong in taking that position.

Whether the proffered testimony would have been of sufficient substance to purge relatrix of the contempt charged we shall not intimate an opinion; the weight of the evidence, viewed in the light of all the surrounding facts and circumstances, was for the trial court to determine. If for no other purpose, the testimony was admissible as bearing upon the good or ill intentions of the relatrix when she interfered with the water which complainant had turned into the ditch. But it is pertinent to observe here that where one has been enjoined from meddling with the ditch of his neighbor it is not every

sort of interference with the ditch which will be followed by condign punishment: As, if my neighbor who lives below me on the stream has a ditch along a hillside above my land and through no fault of mine the ditch breaks, carrying sand and gravel upon my growing crops, whereupon I shut off the water to save myself from loss; in that case certainly my explanation will be received to show that I did not intend any contempt of the court's decree when I shut off the water. If it should appear that the ditch in this case was insufficient to carry water, which fact was known to complainant, and yet he persisted in turning water therein knowing that it would run upon the land of the relatrix and prevent her from seeding it, and relatrix then in good faith shut off the water to prevent loss and damage to herself, it would be a harsh rule that would reject her explanatory testimony.

Relatrix next essayed to show that complainant did not have any right in the ditch; she attempted to introduce testimony showing an abandonment of his right. An objection was sustained to this line of testimony, the court saying: "That should have been specially pleaded." Thereupon counsel for relatrix asked leave to file an answer which the court denied.

Contempt proceedings are *sui generis* (*State ex rel. Zosel* v. **[1]**   *District Court,* 56 Mont. 578, 185 Pac. 1112), but are criminal in their nature (*State ex rel. Rankin* v. *District Court,* 58 Mont. 276, 191 Pac. 772). So highly penal are they in character that the evidence must show that the accused is guilty beyond a reasonable doubt, otherwise he is entitled to be discharged. (*State ex rel. Boston & Mont. C. C. & S. M. Co.* v. *Judges,* 30 Mont. 193, 76 Pac. 10.) In the case last cited this court said that from an examination of the practice provided for in the Code of Civil Procedure (secs. 2170–2183 of the 1895 Codes, corresponding to sections 9908–9921, Rev. Codes, 1921) for summary punishment of contempts it is apparent that contempt proceedings "have most, if not all, the characteristics of a criminal case and few, if any, of a civil action."

Our statute provides that when a person arrested upon a
[2]  charge of contempt has been brought up or has appeared,
the court or judge must proceed to investigate the charge,
and must hear any answer he may make to the same and may
examine witnesses for or against him.  (Sec. 9916, Rev. Codes
1921.)  The character of the "answer" is not indicated; but
that the statute contemplates that a full and fair investigation
of the offense charged shall be made by the court or judge
is beyond question.  When the accused is brought up, or
appears, "the court or judge must proceed to investigate the
charge" and "must hear any answer" which the accused may
make.  That an oral answer, a plea of not guilty, is sufficient
for all purposes we have no doubt.  A search of the authorities
for the historical background of our statute has not afforded any
information of an interpretive character.  But it seems to us
that the language of the statute speaks its own interpretation.
In practice according to our observation persons haled before
the court as for constructive contempt have made answer in one
of three ways: By affidavit, by verified answer, by a plea of
not guilty.  Either method is appropriate.

Upon the hearing in this court Mr. McIntire, Nestor of the
Montana bar, and one of its most distinguished members, said
he thought a plea of not guilty sufficient for all purposes, and
we think his opinion correct.

We note, in passing, that in *State ex rel. Webb* v. *District
Court,* 37 Mont. 191, 15 Ann. Cas. 743, 95 Pac. 593, *State ex
rel. Zosel* v. *District Court, supra,* and *State ex rel. Keiley* v.
*District Court,* 58 Mont. 272, 191 Pac. 519, the answers inter-
posed by the accused were pleas of not guilty.

The proceeding being *quasi* criminal we see no reason why an
[3]  accused should not rely upon a plea of not guilty as he
may do in a criminal case; and upon that plea or answer he
should be allowed to present every defense which will show
that he is not guilty of the public offense—contempt of court—
with which he stands charged.  Relatrix was charged with a
constructive contempt, was ordered to show cause why she

should not be punished for the offense committed. She was told "Appear and you shall be heard" but when she appeared the court said, "You shall not be heard." (*Windsor* v. *Mc-Veigh*, 93 U. S. 274, 23 L. Ed. 914 [see, also, Rose's U. S. Notes].) She was condemned without an opportunity to be heard upon the erroneous theory that she should have conformed to the rules of civil pleading. But even under those rules, in order for complainant to maintain that his rights had been infringed upon, it was incumbent upon him to show that he had the rights he claimed. He pleaded affirmatively that his rights had not been abandoned. Relatrix was entitled to show the contrary under a general denial, and in any view of the case her plea of not guilty amounted to that.

Under that plea relatrix should have been accorded the inalienable privilege of being heard fully in her defense; "for no proposition can be more clearly established than that a man cannot incur the loss of liberty or property for an offense by a judicial proceeding until he has had a full opportunity of meeting the charge against him." (*State ex rel. Gemmell* v. *Clancy*, 24 Mont. 359, 61 Pac. 987.)

This court has held repeatedly that costs in a contempt pro-
[4] ceeding may not be assessed against the contemnor. Where a fine is proper the costs must be paid from the fine. (*State ex rel. Flynn* v. *District Court*, 24 Mont. 33, 60 Pac. 493; *State ex rel. Morse* v. *District Court*, 29 Mont. 230, 74 Pac. 412; *State ex rel. Edwards* v. *District Court*, 41 Mont. 369, 109 Pac. 434.)

The judgment finding relatrix guilty of a contempt of court is annulled. Let the writ issue as prayed for.

*Writ issued.*

Associate Justices Holloway and Stark and Honorable Wm. H. Poorman, District Judge, sitting in place of Mr. Justice Rankin, disqualified, concur.

Mr. Justice Galen, being absent on account of illness, did not hear the argument and takes no part in the foregoing decision.