STATE ex Rel. TAGUE, Relator, *v.* DISTRICT COURT ET AL., Respondents.

(No. 7,457.)

(Submitted June 26, 1935. Decided July 9, 1935.)

[47 Pac. (2d) 649.]

*Mr. J. Miller Smith, Mr. Paul W. Smith* and *Mr. David R. Smith,* for Relator, submitted a brief; *Mr. Paul W. Smith* argued the cause orally.

*Mr. Fred W. Schmitz,* for Respondents, submitted a brief and argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

Supervisory control directed to the district court of Broadwater county and the Honorable George W. Padbury, Jr., as Judge thereof. The relator, Alfred Tague, was adjudged guilty of contempt by the district court. He seeks to have the judgment annulled, vacated and set aside.

In 1881 the district court of Meagher county entered a decree adjudicating certain of the water rights in Duck Creek, now in Broadwater county. Pursuant thereto an injunction was issued whereby one John G. Pickering, a party to the action, together with his successors and assigns, were enjoined and restrained from interfering with the other rights adjudicated by the decree. Pickering at that time occupied what was called the Pickering ranch, now known as the Runnymede ranch. He was enjoined from using any of the waters of Duck Creek upon that ranch until all prior rights under the decree were satisfied. The relator now occupies the Runnymede ranch.

On May 9, 1935, J. S. Reynolds, water commissioner on Duck Creek, filed an affidavit in the respondent court. He set out the facts as outlined above with reference to the decree of 1881, and alleged that relator was a successor in interest of Pickering in the lands occupied by him at the date of the decree; that relator, as such successor, was bound by the terms of the decree and the injunction issued pursuant thereto; that under the terms of the decree relator had no decreed right to the waters of the stream; that relator had been fully advised of the legal status of the water rights in Duck Creek, and that he had knowledge of the rights granted in the decree and of the injunction; and that, notwithstanding such knowledge, he, on May 7, 1935, "willfully and without right and authority, and contrary to the provisions of said decree, and contrary to law, did take, and does now take from said creek by means of a dam and ditch, approximately the full flow of said creek of about 200 inches, leaving the prior

rights in said creek unsatisfied." The affidavit alleges that control of the rights under the decree is now under the jurisdiction of the respondent district court; that by virtue of the decree John G. Plymale and Gray P. Keene have the rightful use to the first 271 inches of the waters of Duck Creek; that relator has, in violation of the decree and in open defiance of the water commissioner, deprived them of the use of the water to which they are entitled; and that such taking of water was contrary to the decree and in defiance of the respondent court, and in contempt thereof. The affidavit concluded with a request that the court issue an order requiring relator to appear and show cause why he should not be punished for contempt.

On May 10, 1935, the court issued an order to show cause. Relator then filed a counter-affidavit and answer, wherein he denied that the decree of 1881 adjudicated all the water rights of Duck Creek or any of the waters thereof; that he was a successor in interest of Pickering; that Pickering ever owned the ranch now owned by relator, or that relator was bound by the 1881 decree. On May 14 relator filed an affidavit of disqualification of Judge Padbury, on the ground of bias or prejudice. On May 15, after issue had been joined, the matter came on for hearing before Judge Padbury. At that time relator objected to any further proceeding in the matter, on the ground that Judge Padbury had been disqualified by affidavit and was, therefore, without jurisdiction to hear the cause. The objection was overruled and the affidavit of disqualification was ordered stricken from the files. The court proceeded to hear evidence.

Reynolds, the water commissioner, testified generally to the facts alleged in his affidavit—to the effect that relator had taken the water from Duck Creek in spite of his demand that he refrain from so doing. For the purpose of showing that relator was a successor in interest to John G. Pickering and therefore bound by the decree of 1881, Reynolds introduced in evidence, over relator's objection, a judgment made and entered by respondent court on June 19, 1934. This judgment was one rendered in a contempt proceeding between the same parties and

over the same subject matter. The relator was therein adjudged guilty of contempt and punished therefor by fine.

Tague testified that he was not a successor of Pickering; that his own predecessors in interest were not parties to the 1881 suit, wherein the decree was entered; that he had an undecreed water right on Duck Creek; that his ranch, or farm, "is the first ranch that had a right, the first ditch ever taken out on Duck Creek."

At the close of the evidence, the respondent court made and caused to be entered judgment finding relator guilty of contempt, and as punishment therefor imposed a sentence of fine and imprisonment. Relator thereupon made application to this court for a writ of supervisory control to have the judgment annulled and set aside. He also asked to have the judgment entered in the 1934 contempt proceeding annulled.

At the outset relator urges error upon the trial court's refusal ██ to be disqualified. There is no merit in this contention. Chapter 93, Laws of 1927, which provides for the disqualification of judges and the filing of affidavits therefor, is not applicable to contempt proceedings. (*Brindjonc* v. *Brindjonc*, 96 Mont. 481, 31 Pac. (2d) 725, and cases there cited.)

The other assignments urged all go to the question of whether the court erred in adjudging relator guilty of contempt. They may, therefore, be discussed together.

By section 9921, Revised Codes 1921, it is declared that "the ██ judgment and orders of the court or judge, made in cases of contempt, are final and conclusive, and there is no appeal; but the action of a district court or judge can be reviewed on a writ of certiorari by the supreme court." (See *State ex rel. Murphy* v. *District Court*, 99 Mont. 209, 41 Pac. (2d) 1113.) "The writ cannot be used to correct errors committed in the exercise of jurisdiction. (*State ex rel. King* v. *District Court*, 24 Mont. 494, 498, 62 Pac. 820.) * * * If the charges are unsupported by the evidence, or the findings are contrary to all the substantial evidence, or where the decision below has no evidence to support it, the question then becomes one of law, and the

evidence may be reviewed to determine if such is the fact, but the court cannot review the evidence to determine the preponderance thereof.'' (*State ex rel. Griffiths* v. *Mayor,* 57 Mont. 368, 188 Pac. 367, 368; *State ex rel. Murphy* v. *District Court,* supra.)

A contempt proceeding is essentially criminal in character, ▪▪▪▪ and is subject to the rules of evidence applicable to criminal cases, that is to say, in a contempt proceeding the character and quantum of proof are determined by the same standards as in any criminal case. Before a court may render a judgment imposing punishment for contempt, the evidence must establish the contemnor's guilt beyond a reasonable doubt. (See opinions in *State ex rel. Keiley* v. *District Court,* 58 Mont. 272, 191 Pac. 519.)

Relator contends that in order to sustain the judgment finding him guilty of contempt, the court was obliged to establish the fact that he was a successor in interest of Pickering, or some other party to the action wherein the 1881 decree was rendered. The only offered proof of this fact was the contempt judgment of 1934. In that judgment it is recited that ''the said Alfred Tague occupies the lands formerly occupied by the said John G. Pickering, and is bound by said decree [of 1881] and the terms thereof.'' Thus, it will be observed, respondents contend that the fact of successorship and privity was judicially determined in 1934 by the contempt proceeding, and that it was for that purpose that the 1934 judgment was offered in evidence. Relator contends that the 1934 contempt judgment does not establish the fact that he was a successor of Pickering or of any other party to the 1881 decree. He contends that the 1934 judgment was not properly admissible in evidence in this proceeding to establish that fact.

With this contention we cannot agree. The 1934 judgment recites the fact of privity and makes a definite finding to the effect that the respondent Tague is bound by the old decree as a successor of Pickering. Indeed, it appears from the judgment entered at that time, as it does from the record before us,

that the main question there, as here, resolved itself into the simple query whether Tague was or was not a successor of Pickering. The taking and the diversion of the water of the stream are not denied. Tague detailed the facts of the taking himself. The only question for consideration by the district court was, and here is, as to the right of Tague to take the water, or rather, upon what theory did he take it?

It is a well-known principle of civil law that the doctrine of *res adjudicata* applies in suits involving water rights. But here the proceedings in both instances (1934 and 1935) are in contempt, and, as we have indicated, are criminal in character.

In the case of *State* v. *Hopkins,* 68 Mont. 504, 219 Pac. 1106, 1109, this court considered a similar matter and cited with approval a rule announced by Freeman on Judgments, as follows: "The principles applicable to judgments in criminal cases are, in general, identical, so far as the question of estoppel is involved, with the principles recognized in civil cases," citing Freeman on Judgments, 2d ed., sec. 318. This matter was further elucidated by the same author in his later (fifth) edition, Freeman on Judgments, sections 648 and 692. In the latter section the author said: "It is not necessary to the conclusiveness of the former judgment that the issue should have been taken upon the precise point which it is proposed to controvert in the collateral action. It is sufficient if that point was essential to the former judgment. If the facts involved in the second suit are so cardinal that without them the former decision cannot stand, they must be taken as conclusively settled."

Here the question arose on an objection to the introduction of testimony, the 1934 judgment. The matter thus comes more nearly within the purview of the English rule quoted in *State* v. *Hopkins,* supra, as follows: "That the judgment of a court of concurrent jurisdiction directly upon the point is, as a plea, a bar, or, as evidence, conclusive between the same parties upon the same matter, directly in question in another court." Mr. Jones in his able work on Evidence makes the following statement: "A judgment is conclusive upon every matter actually

and necessarily decided in the former suit though not then directly the point in issue." (4 Jones' Commentaries on Evidence, p. 3416.)

As we have indicated, the record shows that the contempt matter of 1934 and the one now under consideration are between the same parties and are criminal in character. In 2 Van Fleet's Former Adjudication, page 1242, section 628, the following statement is announced as a text, to-wit: "If there is a contest between the state and the defendant in a criminal case over an issue, I know of no reason why it is not *res adjudicata* in another criminal case." This declaration of principle is followed by numerous citations of cases to support the text. The judgment of 1934 was properly admitted in evidence.

It is urged that substantive property rights such as water rights cannot be adjudicated through the medium of contempt proceedings. Numerous Montana cases are cited in support of this declaration. There can be no quarrel with this statement of law as an abstract principle. It is well supported by authority and is undoubtedly sound in all of its applications. But the principle is not applicable here. It was not attempted to adjudicate a water right through the medium of contempt proceedings in the action of 1934 nor in the present instance. Whatever adjudication of the waters of Duck Creek obtained was by virtue of the 1881 decree. There was no attempt to vary or extend the provisions of that decree in any particular. The proceedings were all directed toward the enforcement of the decree, and the issue as to who was bound by the decree could not be construed into an attempt to adjudicate a water right.

It must be obvious that we cannot set aside and annul the 1934 judgment in this proceeding. We have no record in that case, and it is impossible for us to review the matter upon a mere inspection of the judgment.

It must be understood that it was not attempted in this proceeding to adjudicate any right owned or claimed by the relator, Tague. The two contempt proceedings can only be construed as holding that the acts under consideration were committed

by relator as a successor in interest to Pickering. If he has any other and further or unadjudicated right, that matter may be determined in the ordinary manner.

A careful examination of the record in this case discloses no error. The application for the writ is denied and the proceeding dismissed.

Associate Justices Matthews, Anderson and Morris concur.

Mr. Chief Justice Sands, absent on account of illness, takes no part in the foregoing decision.

Rehearing denied July 11, 1935.