No. 84-453

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

_____

STATE ex rel., JOHN FOSS,

                  Relator,

    -vs-

DISTRICT COURT OF THE FOURTH
JUDICIAL DISTRICT OF THE STATE
OF MONTANA, IN AND FOR THE COUNTY
OF RAVALLI, AND THE WARD IRRIGATION
DISTRICT,

                  Respondents.

_____

ORIGINAL PROCEEDING:

COUNSEL OF RECORD:

        For Relator:

                Loble & Pauly, Helena, Montana

        For Respondents:

                Recht & Greef; Charles H. Recht, Hamilton, Montana

_____

                Submitted:  January 21, 1985

                    Decided:  June 13, 1985

Filed:  JUN 13 1985

*Ethel M. Harrison*

_____
                Clerk

Mr. Justice L.C. Gulbrandson delivered the Opinion of the Court.

Relator, John Foss, petitions this Court to review by a writ of certiorari an order of the District Court of the Fourth Judicial District, Ravalli County, holding him in contempt of court.

This proceeding is a continuation of Ravalli County, Cause No. 6999, "In the Matter of the Establishment and Organization of the Ward Irrigation District." The District Court's continuing jurisdiction over the District, and this action, began with the petition filed by certain parties to form the Ward Irrigation District on April 6, 1938. Generally, the only actions involving the District that the District Court has been called to rule upon has been audits, administrative matters, petitions for the inclusion of lands, and other matters pertaining to the operation of the District.

The controversy that eventually led to this Cause No. 84-453, and its companion case, Cause No. 84-298, was first brought before the District Court in 1979. On April 30, 1979, Ralph Springer, Ronald M. Porter and George W. Else, all commissioners of the Ward Irrigation District filed affidavits with the District Court alleging that John Foss, relator in this action, "without permission removed padlocks from diversion dam [sic] in Ward Irrigation Ditch and refused to replace or return locks to Ward Irrigation commissioner(s)." Based upon those affidavits, the District Court issued a temporary restraining order and, on June 4, 1979, held a hearing on the order to show cause why the temporary restraining order should not be made permanent. Both the Irrigation District and John Foss were represented at that hearing, and both presented evidence pertaining to the control of the headgate in issue. The District Court, in

that action, found that John Foss was not in contempt of court. The court's order included a temporary injunction against John Foss from interfering "in any way with the administration, regulation, or control of the dams, ditches, headgates and other matters pertaining to the [District]." Further, the June 11, 1979 order directed John Foss and other members of the Foss ranch to appear on August 31, 1979, to show cause why the temporary injunction should not be made permanent. The transcript indicates that at the time the District Court issued the temporary injunction, it strongly urged the Foss Ranch to seek another remedy, such as an adjudication of the relative rights and priorities in the waters of the affected ditches, instead of seeking the same adjudication in the injunctive action. The court stated:

> "Well, there has been considerable testimony concerning water rights, water rights on Camas Creek, points of diversions including points of diversion on Camas Creek. I don't believe those issues are properly before the court at this time. I would strongly urge counsel to pursue those remedies. Obviously you [counsel for the Fosses] feel that Mr. Foss has a cause of action, but once again I don't feel they are properly before the court at this time. There are judicial remedies available if he does have such a cause of action, and as I said before, I would strongly urge you to pursue those. . . .
>
> "I will set the order for 60 days to give you an opportunity to file an action, . . . what I would do is set it for another show cause hearing to show why it shouldn't be made permanent if you have not in fact sought another remedy."

Counsel for the Fosses did not petition for an adjudication of water rights prior to the August 31, 1979, hearing. At that hearing, only the counsel for the Irrigation District appeared, and advised the court that no further orders were requested, stating:

> "Counsel for the Fosses, Doug Skelset, has asked that we continue the temporary

3

> order in force without date. I have no
> objection to that, your honor, as long
> as it is understood that at any time I
> can renotice the matter before the court
> to make it permanent.

> "The court: So ordered, thank you."

Nothing apparently happened for the next several years. Neither the District appeared before the court to make the temporary injunction permanent, nor did the Fosses petition for a determination of water rights. Then, on June 8, 1983, Dean Frost, Ronald Porter and Ralph Springer, all commissioners of the Ward Irrigation District filed affidavits with the District Court alleging that Millo Huggins, a relative of the Fosses, and acting in her capacity as agent thereof, interfered with the operation of the District's headgate system. Based on these affidavits, the District Court issued another temporary restraining order and order to show cause. A hearing on the temporary restraining order was set for July 7, 1983. Prior to that, the Fosses filed with the District Court a "Request for Determination of Relative Water Rights," asking the District Court to determine the nature and extent of the water rights of the various parties involved in this litigation, and to determine the relative priorities of the waters in Hayes Creek, the Ward Irrigation Ditch and Camas Creek. Hearings on the temporary restraining order were held on July 7 and July 26, 1983. Both parties were represented by counsel. The District Court, stating that it had heard the testimony of the various witnesses, argument of counsel, and having reviewed the pleadings on the record, found Millo Huggins in contempt of court for violating the August 31, 1979, injunction. Further, the District Court continued the injunction in effect by ordering:

> "3. Millo Huggins, John Foss, the
> owners of the Foss ranch, the relatives,
> servants, agents and employees are
> hereby ordered and enjoined from inter-
> fering in any way, either directly or

4

indirectly, with the activities of the Ward Irrigation District, its commissioners, ditch walkers, agents and employees.

"4. Millo Huggins, John Foss, the owners of the Foss ranch, the relatives, servants, agents and employees, are hereby ordered and enjoined from interfering in any way, either directly or indirectly with the administration, regulation, or control of the dams, ditches, headgates and other matters pertaining to the Ward Irrigation District."

Millo Huggins did not ask this Court to review by certiorari the order adjudging her in contempt.

The Fosses' petition for an adjudication of relative water rights went ahead in the District Court. After several preliminaries, including a substitution of judge, the matter was heard on December 14, 1983, by the Honorable Robert M. Holter, District Judge. Judge Holter, after hearing evidence and reviewing the record issued findings and conclusions on April 17, 1984. That order is the subject of the appeal in Cause No. 84-298.

The next summer, in 1984, this matter arose. Affidavits of the commissioners of the District and a motion by the District for an order holding John Foss in contempt of court were filed. This matter was heard by Judge Henson and in his findings he recognized the August 4, 1983 order, (quoted above) found that John Foss had been aware of said order, and found also that he had willfully violated its terms. He then found John Foss in contempt of court, fined him $500 and sentenced him to serve five days in the Ravalli County jail suspended on certain conditions. The District Court further granted the Ward Irrigation District attorneys fees and costs. John Foss appeals from this order, presenting the following issues for review:

1. That no valid injunction order was ever issued and nor is injunction a remedy available in this proceeding;

5

therefore, the District Court was powerless to find relator in contempt.

2. That the District Court judge no longer had jurisdiction to try the matter.

3. That the District Court erred in requiring relator Foss to pay attorney's fees.

On reviewing a contempt citation by writ of certiorari, we are limited to the following considerations: whether the lower court had jurisdiction to issue the order and secondly, whether there is evidence supporting the same. In Re the Marriage of Smith (Mont. 1984), 686 P.2d 912, 41 St.Rep. 2325; Milanovich v. Milanovich (Mont. 1982), 655 P.2d 963, 39 St.Rep. 963; Schneider v. Ostwald (Mont. 1980), 617 P.2d 1293, 37 St.Rep. 1728; In the Matter of the Contempt of Graveley and Hammerbacker (1980), 188 Mont. 546, 614 P.2d 1033.

Relator argues that the District Court was without jurisdiction to find him in contempt. Section 3-1-501, MCA, states that:

> "The following acts or omissions in respect to a court of justice or proceedings therein are contempts of the authority of the court:
>
> ". . .
>
> "(e) disobedience of any lawful judgment, order, or process of the court; . . ."

Here, relator argues that the order he was found to have violated was not "lawful" and therefore the District Court had no jurisdiction to find him in contempt. He argues that no valid injunction order was ever issued, nor is an injunction remedy available in this type of proceeding. Citing the general rule that an injunction is an action ancillary to another action and is an extraordinary remedy available only when there is an underlying proceeding

pending, section 27-19-101, MCA, and State ex rel. Working v. Mayor (1911), 43 Mont. 61, 114 P. 777, he points out that the only documents the District Court had before it prior to issuing the August 31, 1979, temporary injunction were the three affidavits filed by the Ward District commissioners. These affidavits do not contain the elements requisite to a pleading, and thus no action was pending at the time that order was issued.

Relator's argument is without merit. He neglects to observe that he was found in contempt of court for violating the August 4, 1983, order. At the time of that order, at relators own instance, an action was pending. Although the existence of an underlying action was not specifically pled in the District's motion or the affidavits, the District Court in the 1983 order finding Millo Huggans in contempt, and making permanent the injunction stated that it had read "the pleadings" herein and was "advised thereof." Further, the affidavits filed in support of the District's motion contain the necessary elements to find relator in contempt.

Relator cites section 27-19-102, MCA and argues that an injunction is improper in this action because there was no "obligation existing in favor of the applicant." This argument is also not persuasive. The August 4, 1983, order clearly obligated relator to refrain from tampering with any of the District's distribution system. Relator had notice of his obligation and willfully violated it. The District Court both had jurisdiction to issue the contempt order and had evidence before it to support the same.

Secondly, relator argues that Judge Henson was without jurisdiction to find him in contempt because he had ceded jurisdiction of the underlying adjudication action to Judge Holter. This argument is also without merit. In Kuzara v.

7

Kuzara (Mont. 1984), 682 P.2d 1371, 41 St.Rep. 1201, we stated:

> "This Court has held that a contempt proceeding is entirely independent of the civil action out of which it arose. Myhre v. Myhre (1976), 168 Mont. 521, 548 P.2d 1395. The District Court therefore has the authority to enforce its judgment even though an appeal is pending thereon. Contempts are punishable because of the necessity of maintaining the dignity of and respect towards the courts and their decrees."

See also, State ex rel. Bacorn v. District Court (1925), 73 Mont. 297, 236 P. 553; State ex rel. Enochs v. District Court (1942), 113 Mont. 227, 123 P.2d 971; 17 Am.Jur.2d, Contempt, §2.

As stated in the above cases, the power of contempt is to enforce the decorum of the court, not the dignity of any particular judge thereof. Thus, it does not matter that Judge Henson had ceded jurisdiction over the adjudication to Judge Holter, because all that he was doing in this action was enforcing a lawful order of the court.

Finally, relator argues that the District Court exceeded its jurisdiction when it authorized an award of attorney's fees to the District. First, we must note that a District Court may properly award a party, in this case the movant District, costs of a litigation under the authority of 25-10-103, MCA. Prior cases have limited the amount of these costs to what can be taken out of the fine levied against the contemnor. See State ex rel. Nett v. District Court (1925), 72 Mont. 206, 232 P. 204; State ex rel. Edwards v. District Court (1910), 41 Mont. 369, 109 P. 434; Dunlavey v. Doggett (1909), 38 Mont. 204, 99 P. 436; State ex rel. Flynn v. District Court (1900), 24 Mont. 33, 60 P. 493.

The more difficult inquiry is whether a District Court may award the "prevailing party" in a contempt action attorney's fees. We first must note the unique nature of a

8

contempt action. It is the state's interest, and not any private party's, that is vindicated by the invocation of this power. As we stated in Dunlavey v. Doggett, supra.

> "What we do hold is that contempt proceedings do not furnish a remedy available to the plaintiff for the redress or prevention of a private wrong. While such proceedings may have the result of deterring the defendants from again interfering with plaintiff's rights, still the object to be attained is the vindication of the dignity of the authority of the court, and not indemnity for the plaintiff or any judgment in his favor. (Citations omitted.)

> "Again, it is urged that because in practice contempt proceedings are always instituted at the expense of the owner of the water, he is the one primarily interested, and should be reimbursed for his expenditures in connection therewith. It is undoubtedly true that many owners do find themselves in an unfortunate situation when their water rights are violated; but this is a subject for the legislature to deal with." 38 Mont. at 210, 99 P. at 438.

The general rule in Montana is that a prevailing party in an action is not entitled to attorney's fees unless a statutory or contractual provision expressly provides for such, Cate v. Hargrave (Mont. 1984), 680 P.2d 952, 41 St.Rep. 697; Bovee v. Helland (1916), 52 Mont. 151, 155, 156 P.2d 416, 417. Relator cites to us no statutory authority upon which we may uphold the District Court's award of attorney's fees. Further, we do not find that this case fits within the exceptions recognized in Foy v. Anderson (1978), 175 Mont. 507, 511, 580 P.2d 114, 116 (upholding the court's general equity power to afford complete relief); Cate, supra (awarding attorney's fees to penalize reprehensible self-help); or In re Marriage of Redfern (Mont. 1984), 692 P.2d 468, 41 St.Rep. 2391 (attorney's fees awarded in contempt action to enforce terms of divorce decree). See also; Williams, ". . . and Attorneys Fees to the Prevailing

9

Party: Recovering Attorneys Fees Under Montana Statutory Law," 46 Mont.L.Rev. 119, 121 (1985).

The order of the District Court finding relator in contempt is hereby affirmed, and that portion of the order awarding attorney's fees to the Ward Irrigation District is hereby reversed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

10