No. 83-106

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

_____

IN RE: PETITION FOR ORGANIZATION AND
ESTABLISHMENT OF AN IRRIGATION DISTRICT
IN RAVALLI COUNTY, TO BE KNOWN AS DALY
DITCHES IRRIGATION DISTRICT.

_____

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Ravalli,
The Honorable James B. Wheelis, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Loble & Pauly, Lester Loble II and Thomas Hopgood
argued for Dept. of Natural Resources, Helena,
Montana

For Respondents:

Larry Persson argued for Daly Ditches and other
petitioners, Hamilton, Montana
Recht & Greef; Charles H. Recht and Judy Loring
argued for Skalkaho Creek Exchange Water Users,
Hamilton, Montana
Paul B. Smith, Boulder, Montana
Stanton Cooper, pro se, Hamilton, Montana
Charles Likes, pro se, Hamilton, Montana

Submitted: December 8, 1983

Decided: April 17, 1984

Filed: APR 17 1984

*Ethel M. Harrison*
_____
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

On December 17, 1982, the District Court, Fourth Judicial District, Ravalli County, entered its order and decree establishing an irrigation district in Ravalli County to be known as Daly Ditches Irrigation District.

The appeals here are not concerned with the legality of the organization of the district, but rather how the cost of maintenance of the district shall be allocated or distributed among members and water users.

I.

Facts and History

By transfer from the Montana Department of Natural Resources and Conservation, the district has become the owner of certain irrigation ditches, waste ditches, distribution laterals and three small reservoirs, all formerly known as the Daly ditches water project.

Two of the district's ditches, the Republican Ditch and the Hedge Ditch divert water from the Bitteroot River. These ditches, 12.75 miles and 23.25 miles in length respectively cross in their long courses Skalkaho Creek. The district has water users who own early water rights (that is to say early in time of appropriation) to the use of waters from Skalkaho Creek. The district includes members whose lands are above and easterly from the Republican and Hedge Ditches, and water from these ditches cannot reach such members' lands.

By diverting waters from Skalkaho Creek, irrigation waters can be and have been brought to those higher lands. Long ago an exchange system was worked out whereby the owners of lands below the Hedge and Republican Ditches, who owned

early rights to the use of waters from Skalkaho Creek, permitted the predecessors of the district to divert waters from Skalkaho Creek for distribution to the high lands. Under the exchange, the early Skalkaho water use owners received an equivalent amount of water from the Republican and Hedge Ditches, out of the Bitterroot River, delivered without charge.

The Republican Ditch was originally constructed by the Republican Ditch Company prior to the year 1885. In 1901, the canal right-of-way and water right were conveyed to the Ravalli Land and Irrigation Company.

The Hedge Ditch was constructed for the most part by the fabled Montana copper king, Marcus Daly. All of the rights-of-way and water rights to the Hedge Ditch were conveyed by Margaret P. Daly for herself and as executor of the will of Marcus Daly to the Ravalli Land and Irrigation Company on December 20, 1901.

Under a decree entered on July 29, 1916, in the Ravalli County District Court, in cause no. 2149, entitled Ravalli Land and Irrigation Company v. R. W. Nicol, et al., the District Court decreed the rights of water users from Skalkaho Creek through Ravalli Land and Irrigation Company. The right of Ravalli Land and Irrigation Company to sell water which it had appropriated came before this Court in Brennan v. Jones (1936), 101 Mont. 550, 55 P.2d 697. This Court made note of the exchange arrangement, stating:

> "It appears from the record that prior to the commencement of the original water rights suit, the corporation entered into an arrangement verbally whereby certain of the water users whose rights were based on appropriations out of Skalkaho Creek, and whose lands lay below the 'Republican' and 'Hedge' ditches, obtained from these two ditches an amount of water equal to their rights out of the Skalkaho, and in exchange the corporation diverted

> from the waters of the Skalkaho an amount of water
> equal to that delivered to the water users below
> the two company river ditches.. . ." 101 Mont. at
> 559, 55 P.2d at 698.

In Brennan, it was noted by this Court that the water commissioner in distributing the waters of Skalkaho Creek, distributed first to the irrigation company the amount of its prior rights, in accordance with the priorities of the 1916 decree, and also the amount of water adjudicated to various water users to whom the company was delivering an equal amount of river water from the Republican and Hedge Ditches. The court further noted that the manner of taking waters both by exchange and under the rights which the irrigation company owned was handled the same way both before and after the commencement and termination of the water right suit in 1916. 101 Mont. at 560-561, 55 P.2d at 699.

On October 1, 1942, the Ravalli Land and Irrigation Company deeded all of its right, title and interest in the several irrigation ditches owned by it, waste ditches, distribution laterals, and reservoirs to the State Water Conservation Board. The instrument of transfer recites the following obligation on the part of the water board in connection with the transfer:

> "Said second party further agrees that it will,
> without charge, supply water to those owners of
> land having decreed water rights from Skalkaho
> Creek, and whose lands lie west of and below the
> Republican and Hedge river Ditches, and whose water
> rights have been taken from Skalkaho Creek above
> such ditches for use on higher lands with an
> equivalent amount of water from said river
> ditches."

The Montana Department of Natural Resources and Conservation (DNRC) is the successor to the State Water Conservation Board. During the time that the state has owned the Daly ditch project, it has sustained financial losses.

- 4 -

In 1979, the state legislature found that extensive cost of repairs for the Daly ditch water project were now necessary; it had operated at a loss since the state owned the project; it would require increased subsidization from the general fund for future operation; and the useful life of the water project for the state of Montana had ended. The legislature therefore directed the DNRC to dispose of the project by transferring or selling it, or else the project should be abandoned. Ch. 534, Laws of Montana (1979).

Daly Ditches Irrigation District is being formed for the purpose of taking over from the DNRC the operation and maintenance of the Daly ditch project.

The District Court found that the DNRC has attempted unilaterally to revoke its consent to the exchange agreements by a letter of cancellation sent to individuals claiming exchange user status, and unilaterally to cancel all exchange agreements, and has refused to deliver water from the Republican Ditch or any other ditch in exchange for Skalkaho Creek water. (Findings No. 90, 93, 94.)

Some of the Skalkaho Creek exchange water users have petitioned to be members of the new Daly Ditches Irrigation District; more have not. In its order and decree of December 17, 1982, establishing the district, the District Court made findings relating to the exchange of the use of such waters. It found that the exchange water users (not all are below the Republican and Hedge Ditches, as will be seen later) had relied upon representations of the DNRC and its predecessors that in exchange for the use of their water rights they were to receive substitute water, miner's inch for miner's inch without cost, and that in reliance thereon they had allowed their diversion and irrigation distribution systems and

laterals to be impacted, crossed and intersected by the Daly Ditches; their respective systems had been allowed to deteriorate in their belief that the DNRC and its predecessors considered themselves bound to supply the substitute water from the Bitteroot River. It found that Skalkaho Creek exchange water users had been damaged and suffered detriment, at least those having tenth or superior rights to use of Skalkaho Creek water. It found that the actual cost for operation and maintenance of each ditch, lateral, canal diversion, or improvement of the Daly ditch water project could be determined by existing bookkeeping practice. It then made the following finding:

> "It is fair and equitable that the Skalkaho Creek Exchange water user individuals having tenth or superior water rights will receive water from the Daly Ditch Water Project on the exchange basis and receive a credit against the cost allocable to them for the operation, maintenance, replacement or reconstruction of Republican or Hedge diversions as well as on account of the purchase of water from Painted Rock Water Project. This credit should exist for a fixed number of years." (Finding No. 112.)

The court made conclusions of law based on the findings, and incorporated the same in its decree. The effect with respect to cost is that certain exchange water users who are members of the district will receive a credit, to be determined later by the court after a hearing, on any assessment levied against lands of the water users by the district, if the water user had a tenth or superior decreed right out of Skalkaho Creek.

It will be seen that the effect of the conclusions and the order of the District Court is not explicitly that the exchange water users who are members of the district shall receive the use of water in exchange for the use of their

earlier decreed water rights on a cost-free delivery basis. Instead the court will order a "credit" for a fixed term against district assessments possibly varying from individual to individual, the credit and the duration thereof to be determined at a later hearing. (Conclusion No. 16.)

A further legal effect of the order entered by the District Court is that it did not deprive the exchange water users of other remedies if they should decide not to become members of the Daly Ditches Irrigation District. The court further provided that any individual who owned a decreed right out of Skalkaho Creek and who is currently exchanging Skalkaho Creek water for Bitteroot River water under an exchange agreement, and who does not opt to become a member of the district may avail himself of such further remedies as are provided by any valid agreement or as provided at law or in equity.

In other words, under the decree, exchange water users have a choice. They can come into the irrigation district as members and their rights to credits on their assessments shall be determined by their priorities in the Skalkaho Creek decree of water rights. Or they can remain out of the district, and to preserve their rights, pursue such other remedy as is provided at law or in equity.

The court certified under Rule 54(b) of the Montana Rules of Civil Procedure that the decree was a final judgment for the purposes of appeal. We will now proceed to treat the issues raised by the various parties on this appeal.

II.

Issues raised by the appeal of the DNRC

1. Whether the exchange users, and the issues presented by

- 7 -

the exchange users, are properly before the District Court.

The DNRC contends that only one exchange water user, Bernie E. Swift appeared at the hearing on the petition for the organization of the district to contest the same. Therefore, The DNRC contends that the District Court at such hearing could not determine the issues raised with respect to the exchange water users.

Technically, the DNRC is correct. Section 85-7-106, MCA, provides that at the hearing "all interested persons" whose lands or rights may be damaged "may appear and contest" the organization of the district.

Inherently, however, the District Court, in ordering the district to be established, must determine what lands are to be included within the district. Section 85-7-107, MCA, relating to the court decision after the hearing, provides in subsection (1)(b):

> "Lands which will not, in the judgment of the court, be benefited by irrigation from the works of the proposed districts;. . . which have appurtenant water rights;. . . may not be included in the district unless the owner of such lands consents in writing to the inclusion." (Emphasis added.)

The District Court was careful not to offend that statutory provision. The court left open to the individual decision of the water users who owned appurtenant decreed rights to the use of waters from Skalkaho Creek the decision to become members of the district. Because of the District Court's duty to determine what lands should be included in the district, and which should be excluded, inherently it had to treat the issues raised by the exchange water users, whether the users appeared formally or not.

2. Whether the DNRC or any other party has an obligation to

deliver water to the exchange users.

The statement of the issue negates itself. If the rights to use water are not exchanged, there is no exchange.

The District Court found that the Hi-Line Ditch is a part of the Daly ditch water project and of the proposed irrigation district. Its diversion in Skalkaho Creek is located upstream from all other components or works of the district. The Court found that for the past 81 years the DNRC and its predecessors have supplied water on an exchange basis to the exchange users without reduction of amount based upon stream flow in the Skalkaho Creek; the only source of water for the Hi-Line Ditch is Skalkaho Creek; the portion of the water diverted by the project from Skalkaho Creek into the Hi-Line Ditch is represented by the exchange water that is delivered downstream to the exchange users through the Daly ditch system from the Bitteroot River; without the exchange water, there is insufficient water available to continue irrigating the acreage being irrigated out of the Hi-Line Ditch; the DNRC and its predecessors have for many years been exchanging Skalkaho Creek decreed waters for Bitteroot River waters up to and at least the seventeenth decreed right; a diversion and distribution system existed prior to the construction of the Daly ditch water project for the diversion and distribution of Skalkaho Creek water to its water users; the reconstruction and replacement of that diversion and distribution system for delivery of Skalkaho Creek water to present decreed water rights users is financially not feasible; the diversion and distribution system for diverting and distributing Skalkaho Creek water to its decreed users has degenerated, falling to disrepair and non-use because the exchange users have relied upon the DNRC

and its predecessors to supply exchange water to them through its ditch and canal system free of charge, in consideration for the Skalkaho Creek water diverted by the DNRC for its own use and benefit on lands other than those owned by the Skalkaho water exchange users.

There does appear then to be an obligation, the exact nature of which we do not here attempt to determine, on the part of the newly-organized Daly Ditches Irrigation District, if it intends to use the points of diversion and rights of appropriation appurtenant to the lands of Skalkaho Creek exchange users for the use and benefit of other land owners, to provide substitute water in exchange to the exchange water users. Some of the exchange water users have petitioned to become members of the new district; some have also contracted with the DNRC for an exchange of their appurtenant right; some have refused to contract and rely instead on their appurtenant appropriation rights; some have rights which though decreed may not be useful because of the lack of water to supply the same, the District Court determining that those below the tenth decreed right are of little real value. Aware of these factors, the District Court sought a method to recognize the rights of the exchange water users to obtain water on a basis that would take into account the use by the district of their appurtenant rights in the Skalkaho. If the exchange water users join the district, they will receive a credit on their assessments to be determined at a later time. If they do not join, the exchange water users have left to them all legal or equitable remedies if water is not delivered to them. The District Court was eminently fair in handling the problem of the exchange water users and was acting in accord with legislative authority.

Section 85-7-1912, MCA, provides that any irrigation district shall have the right to contract with the owner or owners of the right to the use of waters in any stream for an exchange of water, and to supply him or them with water from the district system. Section 85-7-2103, MCA, provides that all irrigable lands in each irrigation district shall pay at the same rate for all purposes for which the lands are charged, "except such lands that are included within the district because of the exchange or substitution of water under the provisions of 85-7-1912." The statutes contemplate exactly what the District Court has done in this case.

In a nutshell, the District Court recognized that some form of obligation existed from the district to the exchange water users. In recognition of that obligation, it will give a credit to the exchange water users at or above the tenth decreed rights if they become members of the district. If the exchange water users do not become members of the district, the newly-formed district has the option of contracting with the exchange water users under section 85-7-1912, or risking the pursuit by the exchange water users of their remedies at law or in equity.

3. Whether the language in the deed to the State Water Conservation Board is enforcible as a lien or as a covenant running with the land.

This is really a non-issue at the present time. The court amended it findings of fact and conclusions of law on March 26, 1983. It deleted Finding of Fact No. 99, which had stated that the language of the State Water Conservation Deed "is in the nature of a lien or covenant running with the land . . ." Later the District Court reinstated Finding of Fact No. 99 on the basis that a clerical error had occurred, the

- 11 -

reinstatement taking place on April 25, 1983. The DNRC contends that it is doubtful whether under Rule 59, M.R.Civ.P., the issue is before us.

We have stated above that we will not now determine the nature of the obligation if any, which is owed to the exchange water users. In the stance of the case before us, it is not necessary for us to reach that issue. If in the future one or more of the exchange water users brings suit against the DNRC or the district at law or in equity, it will be proper at that time to determine the nature of the obligation which the exchange water users claim.

We do not reach in any manner the extent of the obligations existing between the exchange water users and the DNRC. We have before us only the matter of the organization and establishment of the Daly Ditches Irrigation District and the rights and duties of the district and the exchange water users as members towards each other.

4. Whether further judicial proceedings are necessary to determine the credit for senior exchange water users.

Here, the DNRC contends that no further judicial proceedings are necessary to determine the amount of the credit, although it admits that such hearings are necessary for the duration of the credit.

The issue is raised prematurely. Until the District Court decides the amounts of the credits and their duration we have no way of determining whether the District Court is in error.

5. Other issues.

Other issues raised by the DNRC will be treated in connection with other subjects hereunder.

## III.

The appeal of Bernie A. Swift or the Skalkaho Creek
Exchange Water Users Association.

The court found that Bernie A. Swift is a member of the Skalkaho Creek Exchange Water Users Association, an unincorporated association, and an officer of the Skalkaho Creek Exchange Water Users Association, Inc., a Montana corporation, and that he did appear and testify on behalf of the said unincorporated association and on behalf of the members of the successor corporation, including himself. Bernie A. Swift also claims status as an exchange water user. He owns 23 acres in Ravalli County and is the owner of Skalkaho Creek water rights which are appurtenant to his 23 acre tract by reason of a decree entered in the case of Ravalli Land and Irrigation Company v. Nicol, above referred to.

The court found that Bernie A. Swift has one right to use of water from Skalkaho Creek which is ranked third in priority among the decreed water rights and which allows him 8.85 miner's inches of water. He further owns a second water use right appurtenant to his 23-acre tract which is ranked twelfth in priority among the decreed rights and which would allow him 14.15 miner's inches of water.

The court further found that the DNRC and its predecessors have for many years and are presently exchanging Skalkaho Creek decreed waters for Bitteroot River water including the seventeenth Skalkaho right as described in Ravalli Land and Irrigation Company v. Nicol. The DNRC and its predecessors have sold waters diverted from the Skalkaho Creek to land owners other than the exchange users.

The court found that Bernie A. Swift had received sufficient water from the Daly ditch water project on an exchange basis to irrigate his 23-acre tract all through the irrigation season, though the exact amount of water he has received is unknown, because there are no measuring devices present.

The court found that prior to 1971 and after each normal irrigation system, Bernie A. Swift and his predecessors in interest had diverted stock water to be used on the 23-acre tract by means of a diversion called the Reeser Diversion. However, in 1971 or 1972, the Reeser Diversion was damaged by a flood and has been useless since that time except for a small amount of stock water. In 1974, the DNRC removed the remainder of the Reeser Diversion, thereby preventing any further diversion of the water at that point. The Reeser Diversion has not been replaced by any party. Bernie A. Swift uses water from other sources, including subwater, overflow water, and Smithy Creek water for his off-season irrigation purposes.

As evidence of the existence of agreements between the exchange water users, including Bernie A. Swift and the DNRC and its predecessors, the court took into consideration the decree of the District Court in Brennan v. Jones, supra, the fact that the DNRC attempted unilaterally to revoke its consent to such exchange agreements by a letter of cancellation, and a written agreement between Ravalli Land and Irrigation Company and Henry and Daisy Gilmore that called for the exchanges of Skalkaho Creek water for Bitteroot River water. In the Gilmore agreement it was provided that if the exchange water was not delivered by the

project, the Gilmores would immediately become entitled to their original Skalkaho Creek water rights.

The District Court also found that the provision in the deed to the State Water Conservation Board was a representation by the DNRC and its predecessors to the exchange water users upon which the exchange water users relied that the DNRC and its predecessors would supply substitute water or exchange water for the use of their water rights on Skalkaho Creek for diversion to other lands.

It is clear from the findings that without the use of the water rights owned by the exchange water users, the Daly Ditches Irrigation District would not have sufficient water to deliver to its contract users.

In spite of those findings, however, as we have noted, the District Court did not make a final judgment respecting the rights of the exchange water users. As we have said, they can join and become members of the irrigation district, or they can remain outside the district and contract with the district for the use of their water rights. If such negotiations fail they may pursue any remedies at law or in equity.

The principal argument on appeal of Bernie A. Swift, and of the exchange water users is that the District Court erred in providing a credit, if an exchange water user joined the district, only to those holders of decreed rights ranked tenth or superior. Swift and his users contend that the remaining holders of rights down to the seventeenth decreed right should also be entitled to a credit.

We regard, however, the action of the District Court in establishing the tenth or superior right as a basis for credit if the exchange water users become members of the

- 15 -

district as merely setting terms for membership of such exchange water users in the district. The District Court found in fact that the holders of water rights down to the seventeenth right had been supplied with exchange water without charge and "without reduction in volume based upon the flow in Skalkaho Creek." (Finding No. 65.) We have found it within the statutory authority of the District Court to make that determination for membership. Section 85-7-107(1)(a), MCA.

Since the District Court reached no final judgment on the rights and obligations between the district and the exchange water users who are not members of the District, our appellate powers do not reach the questions raised by Bernie A. Swift and the water users as to whether the right to receive substitute water is a covenant running with the land or a lien. Nor do we purport to determine here the amounts of water that the exchange water users are entitled to receive under their decreed water rights. Those questions are reserved for the future.

IV.

The Appeal of Stanton Cooper and Charles Likes

Stanton Cooper and Charles Likes objected to the formation of the district. Their predecessors had entered into an agreement with Marcus Daly, the builder of the Daly ditch water project, and particularly the Hedge Ditch, whereby Marcus Daly was allowed to construct the Hedge Ditch in part in approximately the same place as the Blodgett-Culler-Grill Ditch, and in return Daly agreed to transport Sleeping Child water in the Hedge Ditch. Sleeping Child Creek is another water channel involved in the Daly ditch water project. Daly agreed to be responsible for the

- 16 -

maintenance of the combined Hedge and Blodgett-Culler-Grill Ditches to the points of distribution to Cooper and Likes. Before and after its junction with the Hedge Ditch, the maintenance of the Blodgett-Culler-Grill Ditch rests with Cooper and Likes.

The court found that Cooper and Likes had established water rights appurtenant to their land.

Again, the court made no final judgment with respect to Stanton Cooper and Charles Likes. It provided in Conclusion of Law No. 12, that water shall be conveyed from the conjunction of the Blodgett-Culler-Grill Ditch and the Hedge Ditch to the places of dispersion on their property "under conditions that may be agreed upon between the parties or may be later decreed." It found the same with respect to water from the Mason Harmony Ditch, another ditch involved in the project; the water shall be transported through the Hedge Ditch for the benefit of Cooper, again under conditions that may be agreed upon between the parties or later decreed. (Conclusion No. 13.)

Cooper and Likes have appeared in this action and on appeal without counsel. They have objected to the conditions imposed upon them in the formation of the irrigation district on the ground that under section 85-7-106(1), MCA, they are interested persons whose lands or rights would be damaged in the formation of the district. They request that the conditions imposed on their water right-of-way be settled prior to the final formation of the district.

The condition of the record for Cooper and Likes is much the same as that for the exchange water users. The court has not made a definitive judgment with respect to their rights but has left it to future negotiation or decisions. The

District Court found however that Cooper and Likes have established water rights which are appurtenant to their lands and that there historically was transportion of their water free of charge in the Hedge Ditch from its junction with the Blodgett-Culler-Grill Ditch to the places of dispersion.

Absent a final judgment with respect to their water right-of-way, we have nothing to review as an appellate court respecting Cooper and Likes.

CONCLUSION

In essence, the order and decree as amended by the District Court is affirmed. The organization and establishment of the Daly Ditches Irrigation District as ordered by the court is affirmed. Its provisions with respect to membership in the district of holders of exchange water use rights are affirmed. The cause is remanded to the District Court for such further proceedings as may be necessary to determine the rights of the parties or other interested persons. Each party to this appeal shall pay his or its own costs.

_____
                Justice

We Concur:

_____
        Chief Justice

- 18 -

_____

_____,
          Justices

_____
Hon. A. B. Martin,
District Judge, sitting
for Mr. Justice John C.
Harrison