No. 99-059

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 202

295 Mont. 447

984 P.2d 151

IN THE MATTER OF THE ADJUDICATION OF

THE EXISTING RIGHTS TO THE USE OF ALL

THE WATER, BOTH SURFACE AND UNDERGROUND,

EXCEPT FOR THE MAIN STEM OF THE BITTERROOT

RIVER, IN THE NORTH END SUBBASIN OF THE

BITTERROOT RIVER DRAINAGE AREA IN RAVALLI

AND MISSOULA COUNTIES, MONTANA

KEITH R. SWINGER and MARIE E. SWINGER,

Claimants and Appellants,

v.

GARY E. COLLINS,

Claimant and Respondent.

APPEAL FROM: The Water Court of the State of Montana,

Clark Fork Division

The Honorable C. Bruce Loble, Chief Water Judge, presiding.

COUNSEL OF RECORD:

For Appellants:

Larry G. Schuster, Attorney at Law, Great Falls, Montana

For Respondent:

David L. Pengelly, Attorney at Law, Missoula, Montana

Submitted on Briefs: June 10, 1999

Decided: August 30, 1999

Filed:

_____

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

1. ¶Keith R. Swinger and Marie E. Swinger (the Swingers) appeal from the judgment entered by the Montana Water Court, Clark Fork Division, on its findings of fact, conclusions of law and supporting memorandum in this water rights adjudication case. We affirm and remand.
2. ¶We address the following issues raised by the Swingers:
3. ¶1. Are the Water Court's findings of fact clearly erroneous?
4. ¶2. Are the Water Court's conclusions of law correct?

In addition, we address whether Gary E. Collins (Collins) should be awarded costs on appeal and attorney fees as a sanction pursuant to Rule 32, M.R.App.P., for having to respond to an appeal without merit.

## BACKGROUND

1. ¶The present case, involving water rights claims by the Swingers and Collins, is before us on a Rule 54(b), M.R.Civ.P., certification by the Water Court after a tortuous procedural history. Both the Swingers and Collins filed water rights claims under the 1973 Montana Water Use Act and each objected to the other's claim. A Temporary Preliminary Decree was issued in 1992 and, in 1994, the Water Court consolidated certain water rights claims--including those now before us--and set a first status conference. With the exception of a few points in time, the Swingers appeared *pro se* throughout the proceedings and, as the Water Court noted in its memorandum in support of its findings and conclusions, their actions "turned a relatively minor case into a complex and confusing one."
2. ¶After years of motions, objections and other procedural moves by the Swingers, all

of which delayed the case and nearly all of which were denied, the Water Court issued a Pre-Hearing Order on January 15, 1998, confirming the hearing date of January 22, 1998. Lists of Collins' proposed exhibits and the Swingers' proposed exhibits, together with notations regarding whether objections to the exhibit had been lodged by the opposing party, were included as part of the Pre-Hearing Order. The Swingers' exhibit list contained 105 items, and objections by Collins to 56 of those proposed exhibits were indicated.

3. ¶In response to the Pre-Hearing Order, the Swingers notified the court that they would not attend the hearing and expressly stated they were not requesting a postponement. Thereafter, the Water Court issued an order January 20, 1998, warning the Swingers of the risks involved in their decision not to attend. The court specifically advised that, in the event the Swingers failed to appear, "they will waive their right to present evidence and witnesses on their own behalf, to object to evidence and witnesses presented by Gary Collins, to cross examine witnesses and to present their case to the Court."

4. ¶The hearing was held as scheduled on January 22, 1998. The Swingers did not appear in person or by counsel. Thereafter, they filed a reply to the Water Court's January 20 order stating that "they had completed the presentation of their evidence for [the hearing prior to the issuance of the Pre-Hearing Order] which was completely invalidated by the Pre-Hearing Order . . . ." They also advised that they intended to submit their evidence with a posthearing brief. The court responded with an order noting that accepting evidence attached to a posthearing brief would subvert the evidentiary process at the hearing the Swingers chose not to attend and denying the Swingers' implicit motion for leave to submit evidence after the hearing had been completed. Notwithstanding, the Swingers submitted a posthearing brief and attached the entirety of their exhibits; the Water Court sealed the exhibits and did not consider them.

5. ¶On July 17, 1998, the Water Court issued extensive findings of fact, conclusions of law and a supporting memorandum. For reasons that will become evident below, it is unnecessary to set forth those findings and conclusions at any length. Suffice it to say that the court found that Collins is the owner of the second decreed right from Buckhouse Creek with an 1881 priority date. In addition, the Water Court concluded that Collins presented evidence to overcome the Swingers' asserted 1871 priority date for a claimed decreed right from Buckhouse Creek and that the Swingers' priority date for irrigation use from Hayes Creek is 1958.

6. ¶The Swingers moved for a Rule 54(b), M.R.Civ.P., certification and the court denied the motion. The Swingers renewed their motion, Collins did not object to the

certification, and the Water Court granted the renewed motion for Rule 54(b) certification. Judgment was entered, the Swingers obtained counsel and the Swingers' counsel filed a notice of appeal.

# DISCUSSION

1. ¶At the outset, we address Collins' motion to strike Appendix Exhibit Nos. 4, 12 through 16, and 19 attached to the Swingers' opening brief on appeal and all related arguments regarding the Water Court's findings of fact. Collins contends the exhibits were not admitted into evidence during the Water Court proceedings and, indeed, that his objections to some of them were noted in the Pre-Hearing Order. He urges that the Swingers, having elected not to participate in the hearing, cannot now be permitted to submit evidence not contained in the Water Court record. We agree.

2. ¶Without regard to whether Collins had lodged objections to the Appendix Exhibits by the time of the Pre-Hearing Order, it is axiomatic that evidence must be introduced for admission at a trial or hearing by a party. Evidence does not simply make its way into the record unless and until it is offered. Here, the Swingers did not attend the hearing. Moreover, they were warned by the Water Court's January 20, 1998, order that their failure to attend would waive their right to present their evidence to the court. The Swingers having chosen not to attend the hearing, we will not allow them to present their evidentiary case for the first time to this Court on appeal.

3. ¶Nor is the Swingers' response to Collins' motion to strike a model of clarity. With regard to Appendix Exhibit Nos. 12 through 16, the Swingers appear to argue that the exhibits are part of the Water Court record. However, the Swingers do not cite to any portion of the Water Court record at which these exhibits were admitted into evidence or are otherwise part of the record. Rule 23(a)(4), M.R.App.P., requires appellants to cite to the portions of the record on which their arguments are premised.

4. ¶The Swingers also appear to contend that some of the Appendix Exhibits to which Collins objects are "very similar" to those of which this Court took judicial notice in Matter of Establishment & Org. of Ward Irr. (1985), 216 Mont. 315, 701 P.2d 721. On that basis, the Swingers request that we take judicial notice of those exhibits. We decline to do so.

5. ¶*Ward Irr.* involved an adjudication in the district court of control over a certain headgate in the Ward Irrigation District in Ravalli County, Montana. *Ward Irr.*, 216

Mont. at 316, 701 P.2d at 722. There, the appellants seem to have participated in the district court trial. *See Ward Irr.*, 216 Mont. at 319, 701 P.2d at 725. In any event, they included on appeal government survey descriptions and maps of the area which were not introduced as evidence in the district court, urged that the descriptions and maps presented facts not subject to reasonable dispute and urged that our consideration of them was proper under Rule 201(b), M.R.Evid., on that basis. We agreed to consider the evidence because 1) the Comment to Rule 201 provided for taking judicial notice at any stage of the proceeding and included "published maps or charts" within its scope; and 2) the Montana Water Code specifically provided that maps and descriptions were acceptable articles of evidence by which to show a water right. *Ward Irr.*, 216 Mont. at 321, 701 P.2d at 726 (citations omitted). Unlike that case, however, the exhibits the Swingers request this Court to judicially notice are not government survey descriptions or maps and, as a result, the exhibits do not fall within our rationale in *Ward Irr*. Moreover, we simply are not inclined to permit parties who choose not to attend a dispositive trial or hearing in the factfinding court, thereby waiving the opportunity to have evidence supporting their claim admitted, to make their case for the first time in this Court on appeal.

6. ¶With regard to the remaining Appendix Exhibits which Collins moves to strike, the Swingers make no specific response or argument. They argue generally that the "facts for which judicial notice are sought are the operative ones for purposes of this appeal." The problem with the Swingers' argument, of course, is that the "operative facts" in a case are to be presented to--and determined by--the court trying the case. The Swingers having chosen not to participate in the Water Court hearing, we will not consider their version of "operative facts" not of record and not properly before us.

7. ¶Accordingly, Collins' motion to strike the Swingers' Appendix Exhibit Nos. 4, 12 through 16 and 19, and all related arguments, is granted. Neither the exhibits nor the related arguments--which form part of the Swingers' contentions that the Water Court's findings of fact are clearly erroneous--will be considered further.

8. ¶1. Are the Water Court's findings of fact clearly erroneous?

9. ¶The Water Court entered extensive findings of fact and the Swingers assert error. We review the findings of a trial court acting as the finder of fact to determine whether the findings are clearly erroneous. A finding is clearly erroneous if it is not supported by substantial evidence, if the trial court misapprehended the effect of the evidence, or if this Court is left with a definite and firm conviction that a mistake has been made. Quigley v. Acker, 1998 MT 72, ¶ 18, 288 Mont. 190,¶ 18, 955 P.2d 1377,¶ 18 (citations omitted).

10. ¶The Swingers' numerous assertions of error regarding the Water Court's findings of fact are grouped into two categories: whether the findings are supported by substantial evidence and whether we are left with a firm conviction that a mistake has been made. We address the categories in turn.

A. Are the court's findings supported by substantial evidence?

1. ¶The Swingers' first two arguments in this regard are that a witness who testified for Collins was not qualified as an expert and that the nature of the witness' testimony did not call for expert opinion evidence. These arguments relate to the admissibility of the evidence.

2. ¶It is axiomatic that "[e]rror may not be predicated upon a ruling which admits . . . evidence unless . . . a timely objection or motion to strike appears of record, stating the specific ground of objection . . . ." Rule 103(a)(1), M.R.Evid. The Swingers having failed to object to the witness' qualifications and testimony at the hearing, this assertion of error has not been preserved for appeal and we will not consider it further.

3. ¶The Swingers also contend that aerial photographs from 1937 and 1955, admitted into evidence at the hearing and referenced by Collins' witness in her testimony, are "not substantial evidence of the Collins claim." The Swingers' contention appears to be, at least in part, an objection to the relevance of the photographs. Again, however, they made no timely objection to the admission of this evidence or the related testimony during the hearing, as required by Rule 103(a)(1), M.R.Evid. Moreover, the Swingers' contention ignores the other evidence set forth by the court which support its finding that Collins had established his water right with an 1881 priority date.

4. ¶Next, the Swingers argue that Collins' testimony with respect to his use of the claimed water after he purchased his property in 1983 is irrelevant for purposes of determining the extent, if any, of the pre-1973 water right on which Collins' claim rested. Again, because the Swingers did not timely object to the testimony, thereby preserving their right to raise this issue on appeal, we do not address the merits of this argument. *See* Rule 103(a)(1), M.R.Evid.

5. ¶The Swingers also contend that Collins changed his theory regarding the basis of his claimed water right at the hearing and is precluded from doing so. According to the Swingers, Collins premised his water right claim prior to the hearing on being the successor in interest to William E. Bass and, at the hearing, changed that premise and relied on being the successor in interest to Edward Hayes.

6. ¶ There are two problems with the Swingers' contention. First, even if Collins had changed his theory at the hearing, the Swingers' remedy was to object to testimony on such a changed theory in the Water Court. The Swingers did not do so and, as a result, they did not preserve their ability to assert error in this regard. *See* Rule 103 (a)(1), M.R.Evid. Second, the Swingers are simply incorrect in asserting that Collins changed his theory at the hearing. In fact, Collins contended in the Pre-Hearing Order that his claim "is based on a right originally decreed to Edward Hayes in Cause No. 575 . . . ." Pretrial or prehearing orders "control the subsequent course of the action . . . ." Rule 16(e), M.R.Civ.P.

7. ¶The Swingers' final contention in this category is headed "Collins is bound by his own evidence." Here, they observe that Collins was permitted to introduce certain field investigation notes which constituted a portion of the 1959 Missoula Water Resources Survey and that, pursuant to Rule 106, M.R.Evid., they could require that the balance of the document--in particular, interview notes from the Montana State Engineer purportedly adverse to Collins' claim and attached as an Appendix Exhibit to their brief--be introduced into evidence. Once the additional notes are admitted, the Swingers appear to argue, the notes become part of Collins' own evidence and he is bound by their contents.

8. ¶It is true that, under Rule 106(a)(1), M.R.Evid., when part of a writing is introduced by a party, "an adverse party may require the introduction *at that time* of any other part of such item or series thereof which ought in fairness to be considered *at that time* . . . ." (Emphasis added.) The Swingers, by their absence from the hearing, clearly did not seek to introduce the interview notes on which they now rely at the time Collins' evidence was introduced. They may not do so now.

9. ¶We conclude that the Water Court's findings of fact are supported by substantial evidence.

## B. Is this Court left with a firm conviction that a mistake has occurred?

1. ¶In addition to their contention that the Water Court's findings of fact are not supported by substantial evidence, the Swingers contend that the findings are in error under the third prong of our clearly erroneous test (*see Quigley*, ¶ 18) and that we will be left with a definite and firm conviction that the Water Court made a mistake. In support of this contention, the Swingers rely primarily on certain testimony by a witness for Collins relating to an 1884 water rights decree in Cause No. 575 (Decree) and the 1959 abstract of that Decree prepared by the Montana State Engineer's Office. The essence of the Swingers' argument is that Collins was

permitted to modify the 1884 Decree through parol evidence.

2. ¶We observe at the outset that the Swingers point to nothing in the Water Court's findings of fact which establishes a departure from the terms of the Decree. It is axiomatic that the obligation to establish error by a district court falls squarely on the appellant. *See* State v. Carter (1997), 285 Mont. 449, 461, 948 P.2d 1173, 1180.

3. ¶Moreover, the Swingers' argument boils down to an assertion that the Water Court improperly admitted parol testimony. As discussed several times above, the Swingers' remedy in the event Collins offered parol testimony attempting to modify the Decree was to object to the testimony in the Water Court. Their failure to timely object precludes their ability to raise this matter on appeal. *See* Rule 103(a)(1), M.R. Evid.

4. ¶The Swingers having failed to preserve their arguments for appeal, we assuredly are not left with a firm conviction that a mistake occurred in the Water Court's findings of fact. We hold, therefore, that the Water Court's findings of fact are supported by substantial evidence and are not otherwise clearly erroneous.

5. ¶2. Are the Water Court's conclusions of law correct?

6. ¶Our standard in reviewing a court's conclusions of law is whether the court's interpretation of the law is correct. Carbon County v. Union Reserve Coal Co., Inc. (1995), 271 Mont. 459, 469, 898 P.2d 680, 686.

7. ¶The Swingers present, in one paragraph, their contention that "Collins is bound by the doctrine of claim preclusion." They advance no authorities on the subject and, as a result, the Swingers' failure to comply with the Rule 23(a)(4), M.R.App.P., requirement that contentions be supported by citations to authority bars consideration of this argument. *See* Rieman v. Anderson (1997), 282 Mont. 139, 147, 935 P.2d 1122, 1126-27.

8. ¶In their reply brief, the Swingers attempt to clarify their argument in this regard by stating that the Water Court's conclusions are erroneous because they are based on clearly erroneous findings of fact. Because we have determined that the findings of fact are not clearly erroneous, we need not address this argument further.

9. ¶We hold that the Swingers have not established that the Water Court's conclusions of law are incorrect.

10. ¶As a final matter, we address Collins' request for costs on appeal and for attorney fees as a sanction under Rule 32, M.R.App.P., for being forced to respond to contentions on appeal which were completely ill-founded.

11. ¶With regard to costs on appeal, Rule 33(a), M.R.App.P., provides that, unless otherwise provided by this Court, costs on appeal in civil cases will automatically be awarded to the successful party against the other party. Having prevailed in this

appeal, Collins is entitled to his costs on appeal from the Swingers pursuant to Rule 33(a), M.R.App.P.

12. ¶With regard to Collins' request for attorney fees, Rule 32, M.R.App.P., provides that if this Court "is satisfied from the record and the presentation of the appeal in a civil case that the same was taken without substantial or reasonable grounds, such damages may be assessed . . . as under the circumstances are deemed proper." The Swingers' appellate counsel responds that "[t]he Swingers were left to address a record which they did not create." While it is true that the Swingers did not create the record before us, that reality arose from the Swingers' decision not to participate in the hearing despite warnings by the Water Court of the consequences of that choice. In turn, as our discussion of the "issues" raised reflects, the Swingers failed to preserve their issues for appeal. The Swingers' counsel also contends that all of the Swingers' arguments are based on existing law and, as a result, Rule 32 sanctions are inappropriate here. Given our discussion above, it is sufficient to say that existing law requiring the preservation of issues for appeal was substantially ignored in prosecuting this appeal.

13. ¶We are satisfied that this appeal was taken without any substantial or reasonable grounds and that it wasted Collins' resources. It also wasted the resources of this Court, thereby needlessly aggravating our ability to properly address and manage our heavy case load. *See* CNA Ins. Companies v. Dunn (1995), 273 Mont. 295, 302, 902 P.2d 1014, 1018 (citation omitted). Moreover, the appeal served only to further delay a case delayed and obfuscated by the Swingers far too long in the Water Court. We conclude, therefore, that Collins is entitled to the assessment of reasonable attorney fees incurred in defending against this appeal as a sanction pursuant to Rule 32, M.R.App.P. On the basis of that conclusion, this case must be remanded to the Water Court.

14. ¶Affirmed and remanded for further proceedings consistent with this opinion.

/S/ KARLA M. GRAY

We concur:

/S/ J. A. TURNAGE

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER