JUSTICE McKINNON,
dissenting.
¶18 I respectfully dissent from the Court’s opinion. I cannot agree with the Court that the Attendance Center was a “school” within the meaning of § 20-6-105(1)(a)(iii), MCA. Pursuant to § 20-6-501, MCA, before a learning facility may be classified as a “school” it must be “established ... under the laws of the state of Montana at public expense.” Once established in accordance with State law, a learning facility is entitled to all the benefits and protections of a school under Montana law, including the availability of funding, accreditation, and protection against land transfers within the district. Sections 20-9-313, *351 20-7-102(1), (2), 20-6-105, MCA.
¶19 The Legislature has specifically provided a process under which a new elementary school is established. Section 20-6-502, MCA, et seq. That process includes seeking and obtaining approval from the board of county commissioners and the superintendent of public instruction. Sections 20-6-502(3), (4), MCA. In this regard, the Vaughn School Trustees failed to follow the applicable law for establishing a new elementary school. The Vaughn School Trustees neither sought, nor obtained, approval from the Cascade Board of County Commissioners or the Montana Superintendent of Public Instruction to open a new elementary school. Because the Trustees failed to establish the Attendance Center as a new elementary school under the laws of the State of Montana, the Attendance Center cannot be considered a school. To conclude otherwise would be tantamount to disregarding the plain language of the statutory scheme and omitting language that the Legislature inserted. Section 1-4-101, MCA.
I
¶20 The statutory scheme unambiguously requires the board of county commissioners to approve the opening of a new elementary school. The initial step in establishing a new elementary school is for the parents of the students of the prospective school to submit a petition. Section 20-6-502(1), MCA. If the trustees approve the petition, § 20-6-502(3), MCA, provides that the trustees “shall present the petition, the trustees’ approval, and the county superintendent’s findings” on the parents’ petition to the “board of county commissioners for their consideration.” The county commissioners shall deny the opening if the anticipated enrolment is less than two pupils. Section 20-6-502(3), MCA. “In all other cases,” § 20-6-502(3), MCA, states that it is within the county commissioners’ discretion to “approve or disapprove the requested opening or reopening of the elementary school.” The statutory scheme is clear that the county commissioners’ approval is necessary to establish an elementary school. The Legislature has vested them with this power under Montana law.
¶21 Although it is not this Court’s function to question the wisdom of the Legislature, the Legislature is not without a policy justification for providing the commissioners with their power over the opening of a new elementary school. The county commissioners are directly responsible for financing schools in Montana. While the trustees control the budget process in a school district, the trustees are without taxing authority. It is the county commissioners who actually levy the *352 required mills for the budget. Section 20-9-131(3), MCA, provides that after the adoption of the final budget for the school district, the trustees “shall deliver the adopted budget, including the amounts to be raised by tax levies, to the county superintendent,” to be placed before the county commissioners. Section 20-9-142, MCA, then requires the county commissioners “to fix and levy on all the taxable value of all the real and personal property within the district all district and county taxation required to finance, within the limitations provided by law, the final budget.”
¶22 The process for funding the transportation fund for a school district, which is a county based fund used to pay for the costs of getting students from home to school and back, operates in much the same way, with the exception that the transportation fund is controlled by a county transportation board made up of five members, including the county superintendent and a county commissioner. Section 20-10-131, MCA. Like the final budget for a school, the levy required for the final budget for the county transportation fund “must be made by the county commissioners in accordance with 20-9-142.” Section 20-10-144(5), MCA.
¶23 Based upon this statutory scheme, it is clear that the county commissioners have a genuine interest in deciding whether a new elementary school is established. It is the county commissioners who will ultimately levy the taxes for its formation and the transportation of its students. And it is the commissioners who will no doubt be held accountable by taxpayers for the creation of the new school and the corresponding tax increases. The statutory scheme allows the commissioners one substantive opportunity to exercise their power over the funding of a new school for which they are responsible — this comes at the time the school is to be established pursuant to § 20-6-502, MCA. After the school is established, the county commissioners must levy the required taxes to fund and provide transportation for the new school. In short, the Legislature vested the board of county commissioners with their power for good reason.
II
¶24 The statutory scheme also unambiguously requires the superintendent of public instruction to approve the opening of a new elementary school. Section 20-6-502(4), MCA, provides that “[i]f the board [of county commissioners] approves a school opening” the trustees must provide “a copy of the approval, along with the petition, the trustees’ approval, and the county superintendent’s estimate of the *353 probable [number of students], to the superintendent of public instruction.” Section 20-6-502(4), MCA, further provides that the “superintendent of public instruction shall approve or disapprove the requested opening or reopening of the elementary school by the fourth Monday of June.” Here again, the statutory scheme is clear: the superintendent of public instruction’s approval is necessary to establish an elementary school.
¶25 Nonetheless, the Court concludes that the superintendent of public instruction’s approval is unnecessary in this case because the office of public instruction (OPI) “approved the Attendance Center de facto by funding and regulating it.” Opinion, ¶ 15. First, the statutory scheme by its plain terms expressly requires the superintendent of public instruction, not OPI officials, to approve an elementary opening. The “superintendent of public instruction” is defined as the “state government official designated as a member of the executive branch by the Montana constitution.” Section 20-1-101(24), MCA. The OPI is defined separately under § 90-14-105, MCA. The Montana Constitution requires that the superintendent of public instruction be “elected by the qualified electors at a general election” and vests the superintendent of public instruction with all “duties as are provided by law.” Mont. Const, art. VI, §§ 2, 4. The Legislature does not use the terms “superintendent of public instruction” and “office of public instruction” interchangeably within the statutory scheme and defines their respective powers and duties separately.[1] Had the Legislature intended OPI officials to have the power to approve an elementary school opening, instead of the superintendent of public instruction, it could have easily stated as much. The approval of OPI is no substitute for the exercise of actual authority by the superintendent of public instruction.
¶26 Second, the Court’s statement that OPI “approved the Attendance Center de facto by funding [it]” is inherently misleading. While OPI did release funding to the Vaughn School District for additional students, it did not do so because of the opening a new elementary school. The Attendance Center did not receive any funding from OPI in its own *354 name as a newly cast elementary school. Rather, OPI released additional funding to the Vaughn School District because the Vaughn School Trustees claimed an unusual increase of students at the already existing Vaughn Elementary School.
¶27 Section 20-9-313, MCA, permits a school district to seek increased funding from OPI for additional students under limited circumstances. For purposes of the present case, there are two relevant subsections of § 20-9-313(1), MCA, which permit OPI to release increased funding for additional students: subsection (a) and subsection (d). Subsection (a) provides that funding may be increased when “the opening of a new elementary school or the reopening of an elementary school has been approved in accordance with [§] 20-6-502.” Subsection (d) provides that funding may be increased in other unusual circumstances, such as the creation of a new mining operation, when “a district anticipates an unusual enrollment increase in the ensuing school fiscal year.” The manner of computation of funding and the requisite procedures to obtain funding under subsection (a) and subsection (d) are not the same. See Sections 20-9-313, 314, MCA.
¶28 In the present case, the Vaughn School Trustees did not seek funding under § 20-9-313(l)(a), MCA, but instead applied for funding under § 20-9-313(l)(d), MCA. The application form for additional funding submitted by the Vaughn School Trustees clearly described the different categories for requesting funding and the procedures to be followed for obtaining such funding, including an explanation that the procedures under subsection (a) — for obtaining funding for the opening of a new elementary school — and the procedures under subsection (d) — for obtaining funding for an unusual enrollment increase at an existing elementary school — were statutorily different. Yet, the Vaughn School Trustees opted to apply for funding under subsection (d) and follow the requisite procedures applicable to that subsection. And it was under that subsection that OPI provided funding to the Vaughn School District. The release of taxpayer dollars to the Vaughn School District under § 20-9-313(a), MCA — absent the Attendance Center being “approved in accordance with [§] 20-6-502,” MCA — would have been a clear violation of State law. Section 20-9-313(1), MCA. Make no mistake about it, the Montana Superintendent of Public Instruction, nor anyone in her office, approved any funding to the Vaughn School District for additional students based on the opening of a new elementary school at the Hillcrest Colony.
¶29 Lastly, there is no evidence in the record showing that OPI regulated the Attendance Center as a school under State law during *355 the 2013-2014 school year. The only evidence in the record concerning past accreditation is the Vaughn Elementary School’s accreditation status. There is simply no accreditation data for the Attendance Center in the record.[2] More importantly, the Attendance Center could not have been accredited under State law. A learning facility must be established in accordance with § 20-6-502, MCA, before it can be accredited. Sections 20-7-102(1), (2), MCA, provide that “each elementary school... must be reviewed by the superintendent of public instruction to determine compliance with the standards of accreditation”; the “accreditation status of each school must then be established”; and only a “school may be accredited ... .” (Emphasis added.). The Superintendent of Public Instruction could not have properly accredited the Attendance Center because the Vaugh School Trustees did not open the Attendance Center as a school in accordance with § 20-6-502, MCA.
Ill
¶30 The Legislature designed a statutory scheme in which the board of county commissioners and the superintendent of public instruction approve the opening of a new elementary school. Once established in accordance with State law, the Legislature permitted the new elementary school to seek funding, obtain accreditation, and protect itself against land transfers. The Court today fundamentally alters that design. The Court’s decision permits a school to be established in *356 an entirely different manner them the one provided by law. Local school trustees may now sidestep elected officials; seek funding under the pretext of an unusual enrollment increase in an existing school; and, as long as OPI grants funding of some type, establish a new elementary school. This is not the system the Legislature adopted when it passed § 20-6-501, MCA, et seq.
¶31 The Court’s decision ultimately rewards the failure to follow State law. The Vaughn School Trustees are now entitled to all the benefits and protections that come with a new elementary school. The Cascade County Commissioners must now levy taxes to support the Attendance Center; the Montana Superintendent of Public Instruction must now fund and accredit the Attendance Center; and the Power Elementary School District is now prohibited from transferring land within three miles of the Attendance Center.
¶32 The Legislature vested the Cascade Board of County Commissioners and the Montana Superintendent of Public Instruction with the collective authority to establish a new elementary school in Cascade County. It is not this Court’s function to divest elected officials of power that has been properly granted to them by the Legislature. The Vaughn School District failed to obtain the requisite approval to open a new elementary school under the laws of the State of Montana. I would accordingly conclude that the Attendance Center was not established as an elementary school under the laws of the State of Montana.
¶33 I dissent.

 For instance, compare § 20-1-401(3), MCA (“The trustees shall certify to the office of public instruction that a school safety plan or emergency operations plan has been adopted.”) with § 20-1-301(3), MCA (“[T]he superintendent of public instruction shall reduce the direct state aid for the district for that school year by two times an hourly rate, as calculated by the office of public instruction, for the aggregate hours missed.”) (Emphasis added.).

 The Court concedes that the “record is devoid as to the Attendance Center’s accreditation status as of the 2013-2014 year,” but nonetheless argues that the Attendance Center “was granted regular accreditation status for the 2014 school year, as attested to by a certificate signed by the Superintendent of Public Instruction.” Opinion, ¶ 15 n.3. First, because the taxpayers here sought to transfer the land in 2013, the relevant inquiry is whether the Attendance Center was a “school" within the meaning of § 20-6-105(l)(a)(iii), MCA, in 2013, not 2014. Thus, whether the Attendance Center later became a “school” is irrelevant. Second, the “certificate” the Court relies on to show that the Attendance Center was later accredited is not part of the record. “[I]t is axiomatic that evidence must be introduced for admission at a trial or hearing by a party. Evidence does not simply make its way into the record unless and until it is offered.” In re Adjudication of Existing Rights In the North End Subbasin of the Bitterroot River, 1999 MT 202, ¶ 12, 295 Mont. 447, 98 P.3d 151. The Vaughn School District did not introduce the certificate into the record before the Territory Transfer Panel during the evidence phase of this case. The certificate was merely attached to the Vaughn School District’s brief on appeal to the District Court. The Court’s reliance on the document is improper.